189 N.J. Super. 461 (1983)
460 A.2d 223
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALAN BASS AND RENEE NICELY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided March 22, 1983.
*462 E. Carl Broege, Assistant Deputy Public Defender, for defendant Renee Nicely (Joseph H. Rodriguez, Public Defender, attorney).
Michele Adubato for defendant Alan Bass (David Glazer, attorney).
Hilary L. Brunell, Assistant Prosecutor for the State (George C. Schneider, Essex County Prosecutor, attorney).
STERN, J.S.C.
Defendants assert a federal constitutional challenge, basically under the Sixth Amendment, seeking to prohibit "death qualification" of jurors in this capital cause. Alternatively, they claim that any "death qualification" must follow the guilt phase. In furtherance of their position defendants ask this court to consider testimony and proofs presented in other jurisdictions which they believe show that a "death qualified" jury is more likely to convict and impose the death penalty than a jury not so "qualified." In light of my ruling denying defendants' motion, I need not address any issues projected by the procedural aspects of the application.
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that "a *463 State may not constitutionally execute a death sentence imposed by a jury culled of all those who revealed during voir dire examination that they had conscientious scruples against or were otherwise opposed to capital punishment." Adams v. Texas, 448 U.S. 38, 43, 100 S.Ct. 2521, 2525, 65 L.Ed.2d 581, 588 (1980). However, in Witherspoon the court also made clear that:
... nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt ... (391 U.S. at 522-523, n. 21, 88 S.Ct. at 1776-1777, n. 21; emphasis in original)
While Witherspoon announced a "limitation on the State's power to exclude," as opposed to "a ground for challenging any prospective juror," see Adams v. Texas, supra, 448 U.S. at 47-48, 100 S.Ct. at 2527-2528, Witherspoon does recognize the right of a State to insist upon interrogation of prospective jurors in order to assure that they "will consider and decide the facts impartially and conscientiously apply the law as charged by the court." Adams v. Texas, supra, 448 U.S. at 45, 100 S.Ct. at 2526. See also Lockett v. Ohio, 438 U.S. 586, 595-597, 98 S.Ct. 2954, 2959-2961, 57 L.Ed.2d 973 (1978); Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969). The doctrine, premised on the fundamental need of our jury system for a jury to conscientiously apply the law as charged, has been recognized and applied in New Jersey. See, e.g., State v. Holland, 59 N.J. 451, 460-463 (1971); State v. Mathis, 52 N.J. 238 (1968), rev'd 403 U.S. 946, 91 S.Ct. 2277, 29 L.Ed.2d 855 (1971).
As noted above, defendants seek to prohibit "death qualification" of jurors in this capital case. Moreover, as previously indicated, they seek to have this court review proceedings in other courts and conduct an evidentiary hearing on their claim that a jury "death qualified" consistent with Witherspoon is more likely than a "non-qualified" jury to convict a defendant *464 and sentence him to death. Defendants claim that Witherspoon was decided on then "presently available information," 391 U.S. at 517-518, 88 S.Ct. at 1774-1775, and cite Witherspoon as the basis for entitlement to an evidentiary hearing. Id. at 520, n. 18, 88 S.Ct. at 1776, n. 18.[1] In light of footnote 18 in Witherspoon, and the proofs they seek to introduce, defendants alternatively argue that "death qualification", if it is to be permitted, must follow the guilt phase.
In Adams v. Texas, the Supreme Court addressed Witherspoon and its progeny in the context of a bifurcated proceeding:
This line of cases establishes the general proposition that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

We have little difficulty in concluding that this rule applies to the bifurcated procedure employed . .. in capital cases. [448 U.S. at 45, 100 S.Ct. at 2526; emphasis supplied].
Even though N.J.S.A. 2C:11-3(c)(1) provides for bifurcated proceedings before the same jury (absent "good cause" to empanel another jury), thus evidencing a desire for "death qualification" before the guilt phase, defendants insist that Adams is not dispositive. They claim that Adams merely interprets Witherspoon and presumes the same evidentiary record. They assert *465 that the Sixth Amendment requires prohibition of "death qualification" because of evidence not available to the court at the time it decided Witherspoon and Adams.
Similar arguments were made recently to the Fifth Circuit. See Smith v. Balkcom, 660 F.2d 573 (1981), mod. and reh. den. 671 F.2d 858 (5 Cir.1982), cert. den., ___ U.S. ___, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); Spinkellink v. Wainwright, 578 F.2d 582 (5 Cir.1978), cert. den., 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), reh. den., 441 U.S. 937, 99 S.Ct. 2064, 60 L.Ed.2d 667 (1979). In Smith the court assumed that the "evidence does indeed supply the persuasiveness found lacking by the Supreme Court and by state and federal courts since Witherspoon." Id. at 578. Nevertheless, the court held "that the exclusion for cause from Smith's jury of veniremen so unequivocally opposed to the death penalty that they would not follow the law on the subject did not deny his constitutional right to an impartial jury." Id. The court concluded that
... unalterable opposition to the death penalty is a legitimate disqualification and that the exclusion of such disqualified jurors does not violate the fair cross-section principle of the sixth amendment. The fair cross-section must, in the end, be fair [Id. at 583].[2]
As a result the Fifth Circuit in Smith, as in Spinkellink, held that no evidentiary hearing on "death qualification" was required. Smith v. Balkcom, supra, at 575, 578, n. 2, 10.[3]
*466 I need not explore the issue regarding whether a non-death-qualified jury is acquittal-prone or neutral. For present purposes it is sufficient to recognize that a "death qualified" jury is not inconsistent with the fundamental proposition that "The state as well as the accused enjoys a right to an impartial jury." Smith v. Balkcom, supra at 579. See also, Spinkellink v. Wainwright, supra at 596. Therefore, defendants' motions asserting federal grounds to prohibit "death qualification," to permit it only after the guilt phase and for an evidentiary hearing are all denied.
I recognize that there is authority that defendant is entitled to an evidentiary hearing on the question of "whether a death-qualified jury is more likely to convict than a jury selected without regard for jurors' scruples against the death penalty." Grigsby v. Mabry, 637 F.2d 525, 527-528 (8 Cir.1980). While the District Court in Grigsby has apparently not filed any definitive determination following the remand, the California Supreme Court has exhaustively reviewed the available studies and found no basis for holding that exclusion of jurors unable to impose the death penalty has resulted in either unrepresentative or biased juries. See Hovey v. Superior Court, 28 Cal.3d 1, 168 Cal. Rptr. 128, 152-174, 182, 616 P.2d 1301 (1980). Thus, even if Adams v. Texas is not dispositive and even if the Fifth Circuit is incorrect in its holding as a matter of law (avoiding the need for an evidentiary hearing, see Smith v. Balkcom, and Spinkellink v. Wainwright, both supra), there is nothing indicated to this court which in any way suggests that the jury should not be interrogated pursuant to Witherspoon and its progeny. Thus, for the reasons stated, the request for an evidentiary hearing is denied.
While State v. Mathis, supra, may have misapplied or even misread Witherspoon, see, also, State v. Holland, supra, 59 N.J. *467 at 462-463, Mathis clearly recognizes the State's right to insist on a properly conducted interrogation of jurors to determine if they can conscientiously apply the law. The State may ascertain, through voir dire,[4] whether a potential juror would automatically vote against death or be prevented from making an impartial decision as to guilt. See Mathis, supra, 52 N.J. at 248.
To the extent defendants seek relief under state law, State v. Mathis implies that the Supreme Court would reject an approach to this subject which is inconsistent with federal law. In another opinion in this case I have already addressed the subject of the coextensive nature of federal and state constitutional provisions regarding the death penalty. The New Jersey Supreme Court has previously permitted "death qualification" in trials where penalty was simultaneously considered by the same jury which determined guilt. No reason appears to change that policy in this State because of the bifurcated proceeding. See e.g., State v. Forcella, 52 N.J. 263, 290-293 (1968) rev. sub nom. Funicello v. New Jersey, 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971); State v. Funicello, 60 N.J. 60, 65 (1972), cert. den. sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). See, also, State v. Mathis, supra, 52 N.J. at 242; N.J.S.A. 2A:113-4.
For the above stated reasons, the motions are denied.
NOTES
[1] Footnote 18 in Witherspoon reads: "... a defendant convicted by such a jury in some future case might still attempt to establish that the jury was less than neutral with respect to guilt. If he were to succeed in that effort, the question would then arise whether the State's interest in submitting the penalty issue to a jury capable of imposing capital punishment may be vindicated at the expense of the defendant's interest in a completely fair determination of guilt or innocence-given the possibility of accommodating both interests by means of a bifurcated trial, using one jury to decide guilt and another to fix punishment. That problem is not presented here and we intimate no view as to its proper resolution." (Emphasis in original). Witherspoon involved a single proceeding before one jury. The Court did refer to the "tentative" and "fragmentary" data regarding the impact of opposition to death on the issue of guilt. See 391 U.S., at 516-518, 88 S.Ct. at 1774-1775. See also, Bumper v. North Carolina, 391 U.S. 543, 545, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
[2] Both Smith and Spinkellink are Sixth Amendment cases and examined issues related to the requirement that the jury be chosen from a fair cross-section of the community, a subject not analyzed in Witherspoon, and developed thereafter. See e.g., Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In Lockett v. Ohio, supra, 438 U.S., at 596-597, 98 S.Ct., at 2960-2961, the court examined the "fair cross section" principle and held that "Nothing in Taylor ... suggests that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge."
[3] Smith and Spinkellink were federal proceeding on habeas corpus, but a reading of those cases leaves little doubt that there is neither a constitutional right to a hearing nor a Sixth amendment right to prohibit "death qualification." See Smith v. Balkcom, supra; Spinkellink v. Wainwright, supra, 578 F.2d 582, 589-591, n. 11, 591-599.
[4] I have reserved decision on motions directed to how the voir dire should be conducted and for an attorney-directed voir dire. See R 1:8-3.