191 N.J. Super. 347 (1983)
466 A.2d 978
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALLEN BASS AND RENEE NICELY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided May 23, 1983.
*348 Hilary L. Brunell, Assistant Prosecutor, for plaintiff (George L. Schneider, Essex County Prosecutor, attorney).
Jean D. Barrett and William Graves, Assistant Deputy Public Defenders, for defendant Renee Nicely (Joseph H. Rodriguez, attorney).
Michele Adubato for defendant Allen Bass (David Glazer, attorney).
Shelia Croty, Deputy Attorney General, for Norman Chickachop, Director of the Office of Child Abuse Control, Division of Youth and Family Services (Irwin I. Kimmelman, Attorney General, attorney).
Debra L. Stone, Deputy Attorney General for the Attorney General and eighteen County Prosecutors (Irwin I. Kimmelman, Attorney General, attorney).
*349 STERN, J.S.C.
Norman Chickachop, Director of the Office of Child Abuse Control in the Division of Youth and Family Services of the Department of Human Services, the Attorney General and 19 county prosecutors have been served with subpoenas duces tecum requesting records pertaining to all child deaths since August 6, 1982 "where abuse, abandonment, cruelty or neglect is involved or suspected." The prosecutors were also asked for any "referrals on such cases from the Office of Child Abuse Control of D.Y.F.S." The subpoenas were served by defendant Nicely in advance of the guilt phase of this capital case. Chickachop, the Attorney General and the county prosecutors move to quash the subpoenas on various grounds.
Defendants assert a right to obtain the records at this time so that they can adequately prepare for both the guilt and penalty phases of the trial. They further claim that they must plan for the penalty phase at present in order to be prepared in the event either is convicted of a purposeful or knowing homicide by their own conduct. See N.J.S.A. 2C:11-3(a)(1), (2), (c). They argue that trial strategy regarding guilt may depend on the mitigating factors to be produced at the penalty phase, see N.J.S.A. 2C:11-3(c)(5) and that, in any event, they must prepare now for the penalty phase because it shall commence immediately following the prerequisite verdict. Moreover, defendants must give all discovery regarding the penalty proceeding "forthwith" upon entry of a verdict requiring the death penalty proceeding to be conducted. See R. 3:13-4(b).
Defendants argue that the information will reveal "disproportionality" in the event that the death penalty were imposed on either defendant in this case. They assert that they are entitled to show "disproportionality" at this time in order to avoid "death qualification" and other allegedly prejudicial consequences of procedures unique to the trial of a capital case. See State v. Nicely, 189 N.J. Super. 461 (Law Div. 1983). Of course the death penalty cannot be imposed if it is "disproportionate" *350 to dispositions in similar cases considering the defendant and the offense. See Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). See also N.J.S.A. 2C:11-3(e).
N.J.S.A. 2C:11-3(e) provides:
"Every judgment of conviction which results in a sentence of death under this section [N.J.S.A. 2C:11-3] may be appealed, pursuant to the rules of court, to the Supreme Court, which shall also determine whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
A "disproportionality" review is carried out by comparing factors relating to the particular case and the defendant before the court with the evidence and sentences in similar cases. See N.J.S.A. 2C:11-3(e). See also Gregg v. Georgia, supra, 428 U.S., at 161, 173, 188-204, 96 S.Ct. at 2919, 2925, 2932-2939. It is not necessary to definitively decide at this time what is meant by the term "disproportionate"; nor is it necessary to determine whether our statute provides for something different from or more than the federal constitution otherwise requires. It is sufficient to note that, while "disproportionality" is to be considered in terms of similar offenses and similar defendants beyond the matter now before the court, it is to be considered only after the death penalty is imposed.[1] To the extent that defendants assert that the information they seek relates to a "mitigating factor", their argument must also fail. The mitigating factors embodied in N.J.S.A. 2C:11-3(c)(5) relate to the *351 defendant or defendants and particular offense or offenses involved in the case now before the court.[2] See e.g., Lockett v. Ohio, 438 U.S. 586, 602-608, 98 S.Ct. 2954, 2963-2966, 57 L.Ed.2d 973, 988-992 (1978). Therefore, the present subpoenas are not relevant to any proceeding now pending in the cause.
No case has been cited for the proposition that "disproportionality" can be tested pre-trial and particularly before the guilt phase. Moreover, summary judgment or an equivalent practice is not generally appropriate in a criminal case, particularly with respect to an issue such as sentence to be decided after all the facts and circumstances are developed. Cf. State v. Lopez, 188 N.J. Super. 170 (App.Div. 1983); R. 3:21-2. Accord, Proffitt v. Florida, supra, 428 U.S., at 254-260, 96 S.Ct. at 2967-2970; Gregg v. Georgia, supra.[3] In fact, under the statute, the prosecutor can give notice of the aggravating factors "[p]rior to the commencement of the sentencing proceeding, or at such time as he has knowledge of the existence of an aggravating factor ...". Furthermore, the United States Supreme Court and New Jersey Supreme Court have apparently never reversed a conviction for a non-capital offense, lesser included or otherwise, merely because the jury was properly "death qualified" in a capital case. See Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) concerning the obligation to charge a lesser included offense where the facts warrant it in a capital case. Thus, procedures unique to a capital case cannot be deemed so prejudicial that there can be a pretrial determination relating to the ultimate sentence to be imposed.
*352 The subpoenas need not be honored at this time. The matter will be further considered after the guilt phase and following any imposition of the death penalty. The Attorney General and Essex County Prosecutor may present an order on behalf of all those served.[4]
NOTES
[1] Hence, I need not decide at this time whether any record concerning "disproportionality" can or should be made in the trial court. Nor need I decide whether the concept permits or requires review of matters administratively closed or which have not been presented for indictment or which would otherwise be subject to requirements of confidentiality. Moreover, this is not the occasion to address the scope of a "disproportionality" review or hearing directed to other issues, such as excessiveness and arbitrariness, which may be raised at or after sentencing. See e.g. Godfrey v. Georgia, supra; Proffitt v. Florida, supra; Gregg v. Georgia, supra. Thus, I need not address any issues raised concerning the scope and reasonableness of the subpoenas.
[2] N.J.S.A. 2C:11-3(c)(5)(h) relates to defendant's character or record or to the circumstances of the particular offense.
[3] See also Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1968); Lockett v. Ohio, supra; Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
[4] The Essex County Prosecutor, who represents the State in this matter, was also served with a similar subpoena. He represents himself on this application.