195 N.J. Super. 317 (1984)
478 A.2d 1266
STATE OF NEW JERSEY, PLAINTIFF,
v.
SEBASTIAN MONTURI, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided March 8, 1984.
*321 Alfred C. Constants III, Assistant Prosecutor, for the State (George L. Schneider, Essex County Prosecutor, attorney).
Dale Jones, First Assistant Deputy Public Defender, for defendant (Joseph H. Rodriguez, Public Defender, attorney) (Susan Green, Asst. Deputy Public Defender on the brief.)
STERN, J.S.C.
This capital case presents a unique and novel issue of procedure with respect to the bifurcated trial required under N.J.S.A. 2C:11-3c(1). The court must decide the proper manner in which to proceed where certain evidence which may be admissible to prove defendant's guilt may not be admissible at the penalty phase, assuming defendant is found guilty of a "purposeful" or "knowing" murder "by his own conduct".
The issue arises from the following factual situation. The indictment charges defendant with a series of seven offenses occurring on and before April 25, 1983. These offenses include two counts of conspiracy to commit murder and three counts of murder. The murders are alleged to have taken place on April 25, 1983. The indictment also charges the defendant with *322 fifteen additional counts. These "post-murder offenses" are alleged to have taken place on or after April 28, 1983.
The indictment presents two separate sets of offenses; those alleged to have taken place on or before April 25, 1983, and those alleged to have taken place on or after April 28, 1983, the "post murder offenses". The "post murder offenses" are not charged as part of a continuing conspiracy with those events alleged to have occurred on or before April 25, 1983. Thus, we are not concerned with an alleged conspiracy which involves conspiracy beyond April 25, 1983, or with allegations that the conduct referred to in the 15 post murder counts was in furtherance of the same conspiracy. If the events alleged to have occurred after April 25, 1983 were alleged as part of the same conspiracy or were allegedly committed in furtherance of a plan to prevent the victims of the "post murder offenses" from testifying about the same offenses which allegedly caused the murders, see N.J.S.A. 2C:11-3c(4)(f), the issue of joinder before one jury of all counts for all proceedings might not arise. However, as noted, the counts alleging "post murder offenses" do not on their face relate to the murders, the conspiracy to commit the murders, or to any pre-murder offense sufficient to satisfy N.J.S.A. 2C:11-3c(4)(f).
The State's proofs at the guilt phase of the trial will apparently consist largely of alleged admissions concerning the murders made by the defendant to the victims of the "post murder offenses" as well as evidence of the "post murder offenses" allegedly designed to have intimidated those witnesses. It is clear, and subject to little real dispute, that evidence of the "post murder offenses" would be admissible at the trial of defendant as to guilt. See, e.g., State v. Allen, 53 N.J. 250 (1969); State v. Hill, 47 N.J. 490, 500-501 (1966); State v. Chaney, 160 N.J. Super. 49, 65-66 (App.Div. 1978) certif. den. 78 N.J. 405 (1978). However, the issue arises because generally the jury which considers guilt also considers penalty, see N.J.S.A. 2C:11-3(c)(1), and it is asserted, and quite possible, that some testimony concerning "post murder offenses" would prejudice *323 the defendant if considered by the penalty jury, should he be convicted of a "purposeful" or "knowing" murder "by his own conduct". It is further argued that no limiting or curative instruction at the penalty phase could remedy the prejudice. See, e.g., Evid.R. 4, 6.
The aggravating factors noticed are N.J.S.A. 2C:11-3(c)(4)(c) ("The murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim") and N.J.S.A. 2C:11-3c(4)(f) ("The murder was committed for the purpose of escaping detection, apprehension, trial, punishment or confinement for another offense committed by the defendant or another"). Given the aggravating factors noticed and the scheme of N.J.S.A. 2C:11-3c, which limits the State's proofs at the penalty phase to the specific aggravating factors noticed, there is a real question as to whether any of the evidence concerning the "post murder offenses" will be admissible at the penalty phase. Thus, if the same jury hears the guilt and penalty phases and hears at the former evidence admissible as to guilt, but not admissible as to penalty, there is a serious possibility of prejudice. Because the use of a curative instruction may be inadequate, the court has considered whether these issues may be addressed pretrial, see R. 3:13-1, and whether to: (1) sever Counts VIII-XXII, the "post murder" counts, from Counts I-VII, and try guilt and penalty before the same jury which would be "death qualified" before the guilt phase; (2) determine pre-trial that guilt, and if necessary, penalty shall be tried before two different juries in which event the guilt phase shall be tried on all counts before a jury selected as in non-capital cases; or (3) empanel a "death qualified" jury and try the case as to guilt on all counts, deferring any decision as to the necessity for empaneling a separate "death qualified" jury for the penalty phase until the guilt phase is completed. I hold that the third alternative shall be followed. This alternative does not presume that a death penalty proceeding will follow, as does the first alternative requiring severence of counts. *324 Moreover, it is difficult if not imprudent, to pretry and prejudge all evidential and factual issues on which the ultimate issue may turn. It may be that, as the facts unfold, it will more clearly appear that evidence admitted as to guilt may or may not be considered at any penalty phase. It is generally inappropriate to decide issues of admissibility or concerning evidentiary rulings pretrial. See State v. Bass, 191 N.J. Super. 347 (Law. Div. 1983) rev'd. by Appellate Division, rev'd sub nom. State v. Nicely, 94 N.J. 550 (1983) (the Order of May 31, 1983 in State v. Bass and Nicely was entered as a result of the opinion of May 23, 1983); compare R. 3:13-1; see also State v. Lopez, 188 N.J. Super. 170 (Law Div. 1983); cf. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The second alternative may be more economical and promote a more speedy disposition because the third may potentially involve "death qualification" of two juries. However, neither economy nor speed can control where the ultimate penalty and issues of legislative policy are involved.

A.
I have no difficulty concluding that a court may decide pretrial that a second jury will be empaneled if a defendant is found guilty of a "purposeful" or "knowing" murder "by his own conduct". N.J.S.A. 2C:11-3c, evidences legislative intent that generally the same jury shall hear both phases and that it therefore must be "death qualified" before the guilt phase. See State v. Bass, 189 N.J. Super. 461 (Law Div. 1983). However, the statute states that a judge may for "good cause" "discharge" the guilt phase jury and empanel a new jury for the penalty phase. See N.J.S.A. 2C:11-3(c)(1). Specifically, that statute states:
The court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or pursuant to the provisions of subsection b. of this section. Where the defendant has been tried by a jury, the proceeding shall be conducted by the judge who presided at the trial and before the jury which determined the defendant's guilt except that, for good cause, the court may discharge that jury and conduct the proceeding *325 before a jury empaneled for the purpose of the proceeding. Where the defendant has entered a plea of guilty or has been tried without a jury, the proceeding shall be conducted by the judge who accepted the defendant's plea or who determined the defendant's guilt and before a jury empaneled for the purpose of the proceeding. On motion of the defendant and with consent of the prosecuting attorney the court may conduct a proceeding without a jury.[1]
Nevertheless, there are instances where a court may know in advance of the guilt phase that the guilt phase jury could not consider penalty. See, e.g., Grigsby v. Mabry, 569 F. Supp. 1273 (E.D.Ark. 1983) (remand opinion). While Grigsby turns on constitutional values requiring separate juries or death qualification after the guilt phase, a notion rejected by this court in State v. Bass, 189 N.J. Super. at 466, the concepts of due process, fundamental fairness and judicial economy permit the court to declare before the guilt phase, in a case where it is clear that certain evidence of guilt will not be relevant to the aggravating factors, that a non "death-qualified" jury will be empaneled to hear the guilt phase and a separate "death-qualified" jury will be empaneled to hear the penalty phase if required. However, because it may turn out that the subject evidence may be admissible at the penalty phase, I believe that it will be more prudent to "death qualify" the guilt phase jury and try the guilt phase reserving for later the question of whether a second "death qualified" jury need be empaneled.

B
In New Jersey, the State's proofs at the penalty phase are limited to that which is relevant to the specific aggravating factor or factors noticed. This is the clear intent of the language of N.J.S.A. 2C:11-3c(2) and (4).[2] Specifically, N.J.S.A. *326 2C:11-3c(2) states in part that "[a]t the [penalty] proceeding, the State shall have the burden of establishing beyond a reasonable doubt the existence of any of the aggravating factors set forth in paragraph (4) of this subsection." N.J.S.A. 2C:11-3c(4) begins by stating that "... the aggravating factors which may be found by the jury or the court are ...." as stated in N.J.S.A. 2C:11-3c(4)(a) through (h). The word "are", used in the introductory sentence of N.J.S.A. 2C:11-3c(4), is clearly a limiting term. Reading N.J.S.A. 2C:11-3c(2) in conjunction with N.J.S.A. 2C:11-3c(4) the State's proofs at the penalty phase are clearly circumscribed, limited only to evidence relevant to the specific aggravating factor or factors noticed.
In the instant case the aggravating factors noticed are N.J.S.A. 2C:11-3c(4)(c) and (f). I have previously construed N.J.S.A. 2C:11-3c(4)(c) in State v. Bass, 189 N.J. Super. 445, 450-452 (Law Div. 1983). That factor requires (1) a showing of torture, depravity of mind or an aggravated battery to the victim; (2) depravity of mind is the mental state which leads to torture or aggravated battery before the victim is killed, and (3) torture and aggravated battery must be construed together, imposing a requirement for evidence that the victim was seriously physically abused prior to death. Godfrey v. Georgia, 446 U.S. 420, 431, 100 S.Ct. 1759, 1766, 64 L.Ed.2d 398 (1980); State v. Bass, 189 N.J. Super. at 451. Under the Godfrey test, evidence of "post-murder events" or "offenses" to other victims, as in this case, are irrelevant to N.J.S.A. 2C:11-3c(4)(c). This aggravating factor is sustained only by proof of pre-murder conduct of the defendant. The proof of post-murder conduct and offenses aimed at other victims is irrelevant to N.J.S.A. 2C:11-3c(4)(c). Thus, evidence of the offenses contained in counts VIII-XXII would be inadmissible at any penalty phase, to sustain the aggravating factor noticed under N.J.S.A. 2C:11-3c(4)(c).
Similarly, "post-murder events" and "offenses" can have little or no relevance to N.J.S.A. 2C:11-3(c)(4)(f). To *327 sustain that aggravating factor, the State must prove that "the murder was committed for the purpose of escaping detection, apprehension, trial, punishment or confinement for another offense committed by the defendant or another." N.J.S.A. 2C:11-3c(4)(f) (emphasis added). Clearly, the motive behind the murder must be the concealment of another prior offense, and the proofs must be limited to that issue. Here, the reverse is the case; i.e., the "post-murder offenses" were allegedly designed to conceal the post-murder admissions, as well as the murders themselves. Thus, on their face, the "post-murder" offenses appear irrelevant to support the aggravating factor noticed under N.J.S.A. 2C:11-3c(4)(f).
The foregoing analysis makes clear that evidence which may be admissible to prove defendant's guilt may not be admissible at the penalty phase on the specific aggravating factors noticed, if the defendant is found guilty of a "purposeful" or "knowing" murder "by his own conduct." This is so because the statute proscribes admissibility. See N.J.S.A. 2C:11-3c(2), (4)(c) & (f). This might also be the result under a "pure" evidence analysis. See Evid.R. 1(2); 4; 6.
Nevertheless, to prejudge the evidence and order pre-trial that the case be tried to separate juries would be imprudent. The proper course is to proceed under N.J.S.A. 2C:11-3c(1) by "death qualifying" the guilt phase jury, trying the defendant as to guilt on all counts and, if a penalty phase is required, making a determination as to prejudice and the need to discharge the first jury and empanel a second jury before the penalty phase begins.
There is a paucity of case authority on this question. In fact, there are no reported cases on this issue as it impacts on the specific aggravating factors noticed in this case. Nor are there any reported cases where this issue was considered pre-trial. Moreover, there are no reported cases dealing with the issue of evidence admissible as to guilt but not as to penalty. There is some authority dealing with the admission of prejudicial evidence *328 at the penalty phase. See State v. Scott, 297 Md. 235, 465 A.2d 1126 (Md. 1983) (admission of evidence of prior murders for which defendant charged but not convicted, at penalty phase, constituted reversible error); State v. McCormick, 272 Ind. 272, 397 N.E.2d 276 (Ind. 1979) (reversible error where evidence that defendant committed, but was not convicted of, another unrelated murder admitted at the penalty phase. In McCormick the Indiana statute provided that evidence that defendant had committed another murder was an aggravating factor. Nevertheless, the court held that to present the evidence of the aggravating crime to a jury that had already found defendant guilty of an unrelated murder would "undeniably" prejudice defendant); compare People v. Easley, 33 Cal.3d 65, 187 Cal. Rptr. 745, 654 P.2d 1272 (1982).
There is also authority for the proposition that evidence of non-statutory aggravating factors is inadmissible at the penalty phase. See Proffitt v. Wainwright, 685 F.2d 1227, 1266 (11th Cir.1982); Henry v. Wainwright, 661 F.2d 56 (5th Cir.1981), vacated o.g., 457 U.S. 1114, 102 S.Ct. 2922, 73 L.Ed.2d 1326 (1982); see also Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny, Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, supra; Gregg v. Georgia, supra. Compare, Barclay v. Florida, ___ U.S. ___, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion) no federal constitutional defect when state courts deemed harmless consideration of a non-statutory aggravating factor, given existence of statutory factor; Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235, 33 Cr.L. 3195 (1983); Moore v. Zant, 722 F.2d 640, 34 Cr.L. 2311 (11th Cir.1983). Indeed, as previously set forth herein, under N.J.S.A. 2C:11-3c(2), the State's proofs at the penalty phase are limited to the specific aggravating factors noticed (although the jury, of course, would know of the underlying murder or murders). Unlike other States, New Jersey has no "catch all" aggravating factor. Compare, State v. Scott, supra. The foregoing cases bolster my interpretation of the New Jersey *329 statute and elucidate the harm that can befall a defendant where prejudicial evidence and evidence of non-statutory aggravating factors are admitted at the penalty phase. In addition, the foregoing illustrates that much of the evidence that the State may produce at the guilt phase of defendant's trial may not be admissible as to penalty if such a proceeding is necessary.
Given the clear prejudice that may result from use of such evidence before the jury which ultimately considers penalty, it necessarily follows that if such evidence is admitted at the guilt phase but would be inadmissible at the penalty phase, or for purposes of the issue of penalty, the jury may become tainted by its previous exposure to certain evidence at the guilt phase. Under the circumstances a curative instruction might well be ineffective. See Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968) ("There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequence of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored"). However, severing counts VIII-XXII from counts I-VII might not solve the problem because the "post-murder events" and "offenses" would be offered under Evid.R. 55 or otherwise to prove the offenses occurring on and before April 25, 1983. The "post murder events" relate to victims who allegedly heard admissions or statements by the defendant concerning the murders themselves. See Evid.R. 63(7); 63(10). The "post murder events" would undoubtedly be admissible as to guilt, see above. While not directly relevant to the aggravating factors noticed, the "post-murder events" might become relevant and probative to issues including those involving credibility or the like, at the penalty phase, because those "victims" would be offering the evidence at the penalty phase. It would therefore be premature to decide pre-trial that this case must be tried before two juries. This could severely prejudice the State's case on guilt, *330 and as previously noted, the more prudent path is to "death qualify" the guilt phase jury and try the case as to guilt before a jury which might hear the penalty phase. In this way the evidence in question will unfold and it may well become apparent that the evidence will be admissible at any necessary penalty phase. Moreover, no penalty phase would follow if defendant is acquitted on the murder charges. However, if defendant is convicted and no limiting instruction could suffice, a second "death qualified" jury may be empaneled to hear the penalty phase.[3]
The mechanism for empaneling a second jury is found in the "good cause" language within N.J.S.A. 2C:11-3c(1). Although there is clearly a Legislative preference for both phases to be conducted before a single jury, the "good cause" provision sanctions the use of a second jury where appropriate. The State argues that situations constituting "good cause" are limited to those examples set forth in the legislative history. However, it is inconceivable that the Legislature intended "good cause" to be so limited. See Hearings on S. 112 before the Senate Judiciary Committee, February 26, 1982; Senate Judiciary Committee Statement to S. 112, March 1, 1982 and May 20, 1982 (death of juror or lengthy delay causing unavailability of juror). Those examples are merely illustrative and not exhaustive. In addition, it is doubtful (and understandably so) that the Legislature examined the instant issue in great detail. Moreover, due process and constitutional values would require the second jury to be empaneled in certain situations. Cf. Grigsby v. Mabry, supra.
*331 Indeed, one would be hard pressed to envision a case more appropriate for invoking the "good cause" provision than one where the penalty phase will be conducted before a jury that has heard evidence of guilt that is inadmissible as to penalty.
For the foregoing reasons, defendant's motions to sever counts and/or to empanel a second jury[4] for the penalty phase are denied without prejudice to defendant's right to request a second jury to hear the penalty phase should defendant be convicted of a "purposeful" or "knowing" murder "by his own conduct."[5]

ADDENDUM
After further argument following the court's decision of March 8, 1984, and based on additional developments including information relating to possible direct testimony concerning the events of April 25, 1983, the court granted the prosecutor's motion to sever the "post murder offenses" for purposes of trial and to reduce the possibility of empanelling a second jury if there is a penalty phase. Nevertheless, the court feels the legal principles embodied in the opinion of March 8, 1984, are sound and adheres to them.
NOTES
[1] There is no basis for the suggestion that the Legislature intended that the jury be "death qualified" after the guilt phase and discharged if an insufficient number remain. Independent of "death qualification", jurors in capital causes must be interviewed individually and under oath before challenges are exercised. See R. 1:8-3(a).
[2] Statutory language should be given its ordinary meaning absent specific intent to the contrary. Renz v. Penn Central Corp., 87 N.J. 437, 440 (1981); Levin v. Tp. of Parsippany-Troy Hills, 82 N.J. 174, 182 (1980).
[3] While time and judicial economy are not critical factors in the processing of a criminal case, and particularly one involving the death penalty, the court does note that, although each juror will be interviewed individually, the voir dire will not be unduly time consuming even if two juries are "death qualified" because the procedure is to be conducted by the court. See R. 1:8-3; State v. Howard, 192 N.J. Super. 571 (App.Div. 1984).
[4] While his formal motion seeks severance of counts, defendant has urged both remedies in response to the court's sua sponte inquiries concerning the issues considered herein.
[5] As noted above, the State's case is reportedly based on statements by defendant to "victims" of the "post-murder offenses" (who allegedly were subsequently intimidated because of their knowledge). There are issues projected concerning the scope and timing of a hearing under Evid.R. 8 regarding the statements. See State v. Kelly, 61 N.J. 283 (1972); State v. Hampton, 61 N.J. 250 (1972); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Evid.R. 8(3). While the court may now hear such matters pretrial, R. 3:13-1(b), I do not now intend to do so before jury selection in this case because of issues which could be generated by possible publicity before the jury is selected and given appropriate instructions. See State v. Williams, 93 N.J. 39 (1983); State v. Graham, 59 N.J. 366 (1971); State v. Yough, 49 N.J. 587 (1967). The issues concerning the Rule 8 hearing may be further considered, and if a hearing is conducted pretrial and reveals information relevant to the subject of this opinion, I may entertain an application for reconsideration.