her separate cause of action. *See Gimbel, Administrator v. Smidth* (1856), 7 Ind. 627. 429 *N.E.*2d at 991.

Similarly, *Gillespie, supra,* held that a release executed by the husband was not a bar to the wife's action for loss of consortium. The court said:

> The release does not bar Mrs. Gillespie's suit for loss of consortium. Massachusetts law provides that "either spouse has a claim for loss of consortium shown to arise from personal injury of the other spouse caused by the negligence of a third person." *Diaz v. Eli Lilly and Co.,* 364 Mass. 153, 302 N.E.2d 555, 564 (1973). While the loss of consortium claim is premised on defendants' having negligently injured the other spouse, it only seeks to redress damage to "the right to society and sexual relations" with that spouse and is a separate cause of action from that for personal injuries. *Id.* [*Lee v. Allied Sports Assoc., Inc.,* 349 Mass. [544] at 560–561, 209 N.E.2d 329 [(1965)]. As a result, Mrs. Gillespie's claim for loss of consortium accrues to her alone and was not barred when Mr. Gillespie waived his claim for personal injuries caused by defendant's ordinary negligence. *Gillespie, supra,* 541 *F.Supp.* at 1046–47.

Logic dictates that the wife's action in this case is vested in her and may not be dismissed unless authorized by her. The right having been created by *Ekalo* can only be released by the wife who owns it. Were it otherwise, a husband who refuses to litigate for whatever reason could effectively eliminate a claim that is not possessed by him. To permit this would be contrary to the holding in *Ekalo,* which establishes a separate and distinct cause of action in the wife of the injured spouse.

Motion for summary judgment is denied.

STATE OF NEW JERSEY, PLAINTIFF, v. ROY D. SAVAGE AND CHERYL HUBBARD, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided October 12, 1984.

*Harold Mynett,* Assistant Prosecutor for plaintiff (*George L. Schneider,* Essex County Prosecutor, attorney).

*Alfred Brown* for defendant Roy D. Savage.

*Paul Feinberg* for defendant Cheryl Hubbard.

STERN, J.S.C.

Defendants have been jointly indicted. Only defendant Savage is charged with a capital offense. The court must decide whether to try the defendants jointly, with or without "death qualification", or to sever the cases.

Defendant Roy Savage was indicted for murder under *N.J. S.A.* 2C:11–3a(1) and (2). A notice of aggravating factors has been filed, *R.* 3:13–4. Savage has also been charged with hindering apprehension in violation of *N.J.S.A.* 2C:29–3. In a separate count of the same indictment, defendant Cheryl Hubbard has also been charged with hindering apprehension. Ms. Hubbard is not charged with murder or with any conspiracy to commit the murder. Rather, the exclusive charge against Ms. Hubbard relates to the post death efforts to find Mr. Savage

and to prosecute him for the murder. Under these circumstances, where the alleged murder and post-murder events are separate, the court must conclude that severance is appropriate.[1]

In *State v. Bass*, 189 *N.J.Super.* 461 (Law Div.1983), the court held that legislative policy embodied in *N.J.S.A.* 2C:11–3(c) evidenced an intent for "death qualification" to occur before the guilt phase of a capital prosecution; otherwise the legislative intent to have both phases of a capital prosecution before the "same jury" would not be promoted. In *State v. Monturi*, 195 *N.J.Super.* 317 (Law Div.1984), the court indicated that it could determine before the guilt phase of a capital case that a separate jury would be utilized and qualified for the penalty phase. However, the court concluded that legislative policy required "death qualification" and capital jury selection before the guilt phase, subject to a post verdict determination that a second jury could be empanelled for the penalty phase. The notion that the "same jury" could be "death qualified" after the guilt phase was rejected, in part, because prospective capital jurors must be interviewed individually before the exercise of peremptory challenges. See *Id.* at ftn. 1; 195 *N.J.Super.* at 325, *R.* 1:8–3(a). Moreover, if death qualification followed the guilt phase, it is possible that not enough jurors would remain to hear the penalty phase due to their absolute views for or against the death penalty (whether or not alternates could be used to constitute the "same jury").

---

[1]The prosecutor believes that severance is required under *Bruton v. United States*, 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968), and *R.* 3:15. He takes no position on severance otherwise. Defendant Savage opposes severance and perceives no *"Bruton"* issue. In light of his position on admissibility of Ms. Hubbard's statement at a joint trial, there appears no basis to sever on *"Bruton"* grounds. Ms. Hubbard claims that joinder is prejudicial, at least if she must be subjected to "death qualification" and procedures unique to a capital prosecution. Mr. Savage opposes "death qualification" before any penalty phase, and asserts that it cannot occur where a defendant on a non-capital charge is joined with a defendant in a capital cause.

The court now holds that there should be a severance of defendants jointly indicted in the absence of a charge in common relating to the alleged murder.[2] As a result, the defendant who is not charged with murder would not participate in the jury selection process unique to a capital case or to joint proceedings with a defendant on trial for a capital offense. In turn, the legislative policy favoring trial of all phases of a capital case before the "same jury" will be promoted.

There are three alternatives which the court could follow. The matter could proceed with individual juror *voir dire*, R.1:8–3(a), "death qualification" and joint trial as to both defendants. However, that alternative must be rejected under the facts of this case where Ms. Hubbard is not charged with murder. Procedures unique to a capital case require the individual interview of jurors and extended proceedings. *See R.*1:8–3(a). Moreover, although this court has rejected the notion that "death qualification" is unconstitutionally prejudicial to a defendant charged with a capital offense, *see State v. Bass, supra;* compare *Grigsby v. Mabry,* 569 *F.Supp.* 1273 (E.D.Ark. 1983), the process must be deemed to require consideration of subjects not relevant to the non-capital defendant. "Death qualification" has been upheld, and *Grigsby* rejected, with respect to defendants charged with a capital offense. *See, e.g., Hutchins v. Woodard,* 730 *F.*2d 953 (4th Cir.1984), *see also Woodard v. Hutchins,* —— *U.S.* ——, 104 *S.Ct.* 752, 78 *L.Ed.*2d 541 (1984)); *Rector v. Arkansas,* 280 *Ark.* 385, 659 *S.W.*2d 168 (1983), *cert.* den. —— *U.S.* ——, 104 *S.Ct.* 2370, 80 *L.Ed.*2d 842

---

[2]This opinion does not address the situation where two or more defendants are charged with murder and only one is subject to a capital prosecution. In that type of situation where the co-defendants are charged with felony murder or are charged as accomplices not subject to a capital prosecution, the court should be able to determine pretrial that the joinder was proper, that the co-defendants would be prejudiced by participation in the jury selection process unique to a capital cause, and that if one defendant is convicted of a "purposeful" or "knowing" murder "by his own conduct," a second jury will be selected for the penalty phase.

(1984); *Pruett v. Arkansas,* 282 *Ark.* 304, 669 *S.W.*2d 186 (1984); *People v. Fields,* 35 *Cal.*3d 329, 197 *Cal.Rptr.* 803, 673 *P.*2d 680 (1983). *See also Maggio v. Williams,* 464 *U.S.* 46, 104 *S.Ct.* 311, 78 *L.Ed.*2d 43 (1984). This subject need not be explored with respect to the trial of capital and non-capital defendants jointly because severance is appropriate in this case.[3]

The second alternative is to try both defendants jointly before one jury and to "death qualify" the jury if the capital defendant is convicted of a "purposeful" or "knowing" murder "by his own conduct." If enough jurors do not remain,[4] a second jury will be empanelled after the new jurors are individually interviewed and "death qualified." *See R.* 1:8–3(a). In this way the joinder would be preserved and no defendant prejudiced by the capital jury selection process.

There is no doubt that defendants can be tried together in a capital cause. *See e.g., State v. Mayberry,* 52 *N.J.* 413, 421–422 (1968); *State v. Laws,* 50 *N.J.* 159, 175 (1967), on reargument 51 *N.J.* 494, *cert. den.* 393 *U.S.* 971, 89 *S.Ct.* 408, 21 *L.Ed.*2d 384 (1968); *State v. Sinclair,* 49 *N.J.* 525, 550 (1967); after remand 57 *N.J.* 56 (1970); *Reaves v. State,* 242 *Ga.* 542, 250 *S.E.*2d 376, 382–383 (1978); *see also State v. Dolbow,* 117 *N.J.L.* 560 (E & A); app. dis. 301 *U.S.* 669, 57 *S.Ct.* 943, 81 *L.Ed.* 1334 (1937); *R.* 3:7–6; *R.* 3:15. However, in this case the defendants were not indicted jointly for the crime of murder, the only offense for which the death penalty may attach.

Given the court's discretion in terms of granting a severance in such circumstances, *e.g., State v. Laws, supra; State v. Sinclair, supra; Kelley v. State,* 248 *Ga.* 133, 281 *S.E.*2d 589

---

[3]In appropriate circumstances, with proper joinder, a non-capital defendant may be required to participate in the capital jury selection process before the guilt phase. I need not address that subject further herein.

[4] I do not now have to consider whether remaining alternative jurors would constitute part of the "same jury" under this theory.

(1981); *Reaves v. State, supra,* and given the strong legislative policy favoring trial of both phases of a capital case before "the same jury," a severance of defendants appears the proper alternative. Severance in such circumstances is appropriate because of the distinct nature of the offenses and in the absence of a charge in common relating to the alleged murder. *Cf., eg., State v. Pickles,* 46 *N.J.* 542 (1966); *State v. Tapia,* 113 *N.J.Super.* 322 (App.Div.1971); *State v. Orlando,* 101 *N.J.Super.* 390 (App.Div.1968), certif den. 52 *N.J.* 500 (1968); *State v. Kropke,* 123 *N.J.Super.* 413 (Law Div.1973). *Compare State v. Mayberry, supra; State v. Laws, supra; State v. Sinclair, supra. See also R.* 3:15–2.

Perhaps where two or more defendants are jointly charged with murder and only one is charged with murder "by his own conduct" and subject to a notice of aggravating factors, the case should be tried jointly as to all defendants with or without procedures unique to a capital prosecution. *Cf. State v. Laws; State v. Sinclair, supra.*[5] *See also, eg., Enmund v. Florida,* 458 *U.S.* 782, 102 *S.Ct.* 3368, 73 *L.Ed.*2d 1140 (1982). In those circumstances, if "death qualification" does not precede the guilt phase, a second jury can be selected and "death qualified" before the penalty phase. However, where only one defendant is charged with murder, a notice of aggravating factors is filed as to that defendant, and another defendant is charged in the same indictment with an offense other than the murder, the case should be severed as to defendants and the matter shall proceed as a capital prosecution involving the defendant charged with murder. Legislative policy will be preserved with

---

[5]There is no New Jersey decision on the question of when "death qualification" should occur in multi-defendant cases, where less than all defendants are charged with a capital offense, since New Jersey has enacted a statute requiring a bifurcated procedure. Cases under prior statutes must be understood in context where all defendants charged with murder were exposed to the death penalty.

death qualification before the guilt phase to promote disposition of all issues before the same jury.[6]

I conclude that severance of defendants is required under the circumstances of this case where defendant Savage is charged with offenses including capital murder and defendant Hubbard is charged in one count with hindering apprehension, a subject which arises after the alleged murder and which is incidental to it.[7]

---

[6]The Georgia capital statute was considered by our Legislature when it amended Chapter 11 of Title 2C in 1982. *See State v. Bass,* 189 *N.J.Super.* 445 (Law Div.1983). By statute in Georgia, Code Ann. § 27–2101, a defendant charged with a capital offense has a right to severance. This is not the occasion to examine the impact, if any, of the absence of a similar provision in New Jersey law. As to the question of severance in capital cases, *see* Annot. 71 *A.L.R.*3d 453, 486–87 (1976).

[7]As noted above, the State sought (on other grounds), and the defendant Savage opposes, severance of defendants. I have not considered, in the absence of argument, severing the murder and hindering charges involving Mr. Savage, and processing jointly, if then appropriate, the hindering apprehension counts after disposition of the capital cause. I hold herein that defendant Savage will be tried alone for murder. If counsel wish to be heard in terms of severing the first and second counts as to him and further considering of joinder of the hindering charges, I will entertain an application on notice to all parties.