STATE OF NEW JERSEY, PLAINTIFF, v. JERICHO WILKINS AND MARCELLIES T. PETTIFORD, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided May 29, 1987.

*Gary J. Bogdanski*, for plaintiff (*Herbert J. Tate, Jr.*, Essex County Prosecutor, attorney).

*Terence M. Scott*, for defendant Jericho Wilkins.

*Nicholas E. Caprio*, for defendant Marcellies T. Pettiford.

FEINBERG, J.S.C. (retired and temporarily assigned on recall).

This is a motion by defendant, Marcellies T. Pettiford, to sever his trial from defendant, Jericho Wilkins, pursuant to *R.* 3:15–2(b).[1] Under indictment no. 1–1–87 both defendants are charged with the purposeful or knowing murder of James Hutchins on May 26, 1986 contrary to *N.J.S.A.* 2C:11–3a(1), (2). Both defendants are charged with two counts of illegal weapon possession contrary to *N.J.S.A.* 2C:39–5b, –4a. Additionally, Marcellies Pettiford is charged with two counts of witness tampering on or between June 23, 1986 and June 24, 1986, and on September 10, 1986 contrary to *N.J.S.A.* 2C:28–5. Jericho

---

[1] *R.* 3:15–2(b) "Relief from Prejudicial Joinder Motion by Defendant and State." If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation, the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.

Wilkins has been presented with a notice of aggravating factors pursuant to *N.J.S.A.* 2C:11–3c(2). The question before the court is whether the initial joinder of defendants was proper, if so, is the noncapital defendant unduly prejudiced by participating in the uniqueness of a capital cause, *i.e.,* "the death qualification of the jury," [2] so that he is unable to receive a fair trial.

Oral argument was heard on this matter on May 29, 1987, appearances having been entered by Nicholas E. Caprio, for defendant, Marcellies T. Pettiford; Terence M. Scott, for defendant, Jericho Wilkins; and Gary J. Bogdanski, Assistant Prosecutor, Essex County, appearing for the State. Defendants were not present. The motion for severance was denied. This opinion supplements the court's decision.

The court is presented with a novel issue and the only reported case that appears to shed light is *State v. Savage,* 198 *N.J.Super.* 507 (Law.Div.1984). In *Savage* one defendant was charged with murder, the other defendant with hindering apprehension after the murder. The court decided to sever the two defendants. The State contends that *Savage* does not apply since both defendants here are charged with murder. Although the actual holding in *Savage* may not apply because of the factual differences, there is *dictum* that is suggestive as to avenues the court may consider when trial is proceeding against two defendants charged with murder where only one is a capital defendant. The court stated:

> This opinion does not address the situation where two or more defendants are charged with murder and only one is subject to a capital prosecution. In that type of situation where the co-defendants are charged with felony murder, or are charged as accomplices not subject to a capital prosecution; the court should be able to determine pretrial that the joinder was proper, that the co-defendants would be prejudiced by the participation in the jury selection process unique to a capital cause, and if one defendant is convicted of a purposeful or knowing murder by his own conduct, a second jury will be selected for the penalty phase. [*Id.* at 510, n. 2]

---

[2] The process by which jurors are selected to serve on a death penalty case is referred to as "the death qualification of the jury."

The court in *Savage* was thus of the opinion that one way to avoid possible prejudice in the matter, once the court finds the initial joinder is proper, is to try the defendants together without qualifying the jury, and then, if necessary, select and qualify a second jury for the penalty phase. However, the *Savage* opinion goes on to state: *"In appropriate circumstances, with proper joinder, a non-capital defendant may be required to participate in the capital jury selection." Id.* at 511, n. 3; emphasis supplied. This court believes the appropriate circumstances exist in the case at hand for the noncapital defendant to participate in the capital jury selection.

 The initial joinder of defendants and the counts under the indictment was in this case proper. The defendants charged under the indictment are alleged to have participated in the same act or series of acts constituting offenses contrary to the laws of the State.[3] Additionally, the State contends the same witnesses will be used in the prosecution of defendants. Although both defendants are charged with the same murder, as well as the same weapon possession charges, only one defendant, Marcellies Pettiford, faces two counts of witness tampering. Pettiford argues that he will be prejudiced by this additional charge, and this alone should dictate severance of defendants. It is apparent to the court that Pettiford lacks standing to claim that the additional counts toward him warrant a severance of defendants.[4] As to whether the counts of

---

[3] *R.* 3:7-7 "Joinder of Defendants." Two or more defendants may be charged in the same indictment or accusation if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

[4] On oral argument, Wilkins' counsel did not seek to sever defendants on the murder but rather to sever Wilkins from the witness tampering counts. Thus, in effect, opposing joinder of the counts rather than joinder of defendants.

witness tampering should be severed from the other counts of the indictment. R. 3:7–6 provides:

> Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same acts or transactions or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

Here, the witness tampering grew out of the same criminal episode or, in this case, murder, which is the subject of the indictment. The alleged commission of a crime and subsequent alleged acts taken to evade prosecution of that very crime constitute a common scheme or plan. There is, indeed, sufficient nexus between the witness tampering counts and the other counts of the indictment. In fact, count three charges Marcellies Pettiford with witness tampering within one month of the murder of James Hutchins.

■ Jericho Wilkins contends he will be prejudiced by the witness tampering counts naming Pettiford which do not relate to him since he was in jail on the dates of the alleged acts. In *State v. Chaney*, 160 *N.J.Super.* 49 (App.Div.1978), certif. den. 78 *N.J.* 405 (1978), *cert.* den. 440 *U.S.* 922, 99 *S.Ct.* 1250, 59 *L.Ed.*2d 475 (1979), two defendants were charged with murder and only one defendant faced a count of allegedly threatening a material witness at the scene of the murder. The appellate court found that the counts were properly joined, and that the joinder of the defendants was proper. The appellate court reasoned:

> The fact that some evidence would be admissible at trial only as to one defendant presents nothing novel. *State v. Manney*, 26 *N.J.* 362, 369 (1958). While any joinder of offenses or defendants has some potential for harm, we see no basis for a reasonable apprehension of prejudice here, since any possible harm could be, and in this case was, completely dissipated by appropriate instructions to the jury. We have no reason to believe that the jury disregarded those instructions. The denial of this defendant's motion for severance did not amount to a mistaken exercise of discretion on the part of the trial judge. [160 *N.J.Super.* at 66]

The trial court will repeatedly admonish the jurors to give their separate consideration as to whether each defendant, individually, is innocent or guilty of the particular crime charged; and to

consider each piece of evidence only as it relates to that particular offense for which that defendant is charged. This court believes as the appellate court did in *Chaney* "that there is no reason to believe the jury will disregard these instructions." *Ibid.*

■ The court, having been satisfied that there is proper joinder, is faced at this juncture with addressing the issue of possible prejudice to the noncapital defendant by his participation in the "death-qualification" jury selection process at the outset of his murder trial. Defense counsel for Pettiford argues that the Supreme Court in *Lockhart v. McCree,* 476 *U.S.* 162, 106 *S.Ct.* 1758, 90 *L.Ed.*2d 137 (1986) "accepted for purposes of the opinion that the studies are both methodically valid and adequate to establish that death qualification in fact produces juries somewhat more 'conviction prone' than non-death-qualified juries." [5] 476 *U.S.* at ——, 106 *S.Ct.* at 1764, 90 *L.Ed.*2d at 147.

Defense counsel further contends that although the Supreme Court found that the constitution does not prohibit states from death-qualifying juries in capital cases there is no reason to impose a "conviction prone" jury on a noncapital defendant.[6] The trial court here, however, is of the opinion that if the death qualification is not unconstitutional for one who may face the death penalty, then it should not be any less constitutional for a non-capital defendant, especially where the jury is instructed to consider defendants separately. In *State v. Scioscia,* 200 *N.J.*

---

[5]However, *Lockhart* went on to say "It is important to remember that not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law ... this hardly can be said to create an appearance of unfairness." *Lockhart, supra,* 476 *U.S.* at ——, 106 *S.Ct.* at 1766, 90 *L.Ed.*2d at 149–150.

[6]Our Supreme Court also stated that "the death qualification of jurors prior to the guilt phase of a capital trial does not offend notions of fundamental fairness." *State v. Ramseur,* 106 *N.J.* 123, 251 (1987).

*Super.* 28, 43 (App.Div.1985), certif. den. 101 *N.J.* 277 (1985), the court reiterated that "although the danger of guilt by association underlies all joint trials, this peril can generally be defeated by forceful instructions to the jury to consider each defendant separately." This court will give forceful instructions at the commencement of the trial, during the trial, and at the closing of the trial. The court in *Scioscia* went on to say "we do not suggest that such a charge will always be sufficient ... the question is whether a jury is likely to be unable to comply with the court instructions." 200 *N.J.Super.* at 43. This court has no reason to believe the jury in this case will be unable to comply with the court's instructions. Counsel will have the opportunity to select those jurors they feel are capable of complying with the court's instructions. In fact the very test for qualifying jurors in a capital case is whether the jurors' views on the death penalty would prevent or substantially impair the performance of his or her duties as a juror in accordance with his instructions and his oath. *State v. Ramseur*, 106 *N.J.* 123, 249 (1987) (citing *Adams v. Texas*, 448 *U.S.* 38, 45, 100 *S.Ct.* 2521, 2526, 65 *L.Ed.*2d 581, 589 (1980)).

This court further believes that selecting and qualifying a second jury for the penalty phase is not the proper remedy for alleviating possible prejudice, if any, to the noncapital defendant. Although counsel for Wilkins consents to separate juries, our Supreme Court in *State v. Ramseur, supra*, stated "we believe, as do the other jurisdictions that have addressed the issue, that there is no satisfactory alternative to death qualification of jurors prior to the guilt phase." *Ramseur*, 106 *N.J.* at 253. The Supreme Court further stated "our statute presupposes in most instances that there will be the same jury that heard the guilt/innocence phase of the trial. *Id.* at 251–52. Section c(1) provides:

Where the defendant has been tried by a jury the [separate sentencing] proceeding shall be conducted by the judge who presided at the trial and before the jury which determined the defendant's guilt except that, for good cause, the court may discharge that jury and conduct the proceeding before a jury empaneled for the purpose of the proceeding.

There is no good cause in this matter for empaneling a second jury since forceful jury instructions will be given to the jury to consider defendants separately. The court in *Ramseur* went on to say "the legislature has spoken in this area, explicitly requiring that generally the same jury must decide both guilt and sentencing ... Absent a constitutional basis, this court is not empowered to override the legislature's determination." *Ramseur*, 106 *N.J.* at 252, n. 56.

Finally, counsel contends that the noncapital defendant, Marcellies Pettiford, should not be exposed to the lengthy procedure of a capital case. However, the court's desire for judicial efficiency outweighs defendant's interest in the length of trial since the length of the trial does not affect the right of defendant to have the merits of his case fairly decided. *See State v. Scioscia, supra,* 200 *N.J.Super.* at 43.

The court finds the joinder to be proper and jury instructions will be issued to eliminate possible prejudice.

Accordingly, the motion for severance is denied.