STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CLARENCE E. LYNCH, DEFENDANT-RESPONDENT.

Argued January 8, 1979—Decided March 19, 1979.

328

*Mr. Frank H. Graves,* Assistant Prosecutor, argued the cause for appellant (*Mr. Richard S. Rebeck,* Middlesex County Prosecutor, attorney).

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Mr. Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

SCHREIBER, J. The issues in this case concern the State's right to appeal from a judgment of dismissal, the propriety of granting a motion for judgment at the conclusion of the State's opening to the jury, and the application of the

Double Jeopardy Clause when a judgment of dismissal has been improvidently entered.

Defendant Clarence E. Lynch was indicted in Middlesex County as an accessory after the fact in violation of *N. J. S. A.* 2A:85-2. The indictment alleged that he, knowing that Carrie Speight had committed a high misdemeanor by distributing narcotics, provided her with transportation in the Borough of South River on December 19, 1974 for the purpose of preventing and hindering her apprehension. Defendant moved to dismiss the indictment on grounds of double jeopardy and fundamental fairness because he had been indicted, tried and acquitted in Burlington County of aiding and assisting Carrie Speight to escape apprehension in Bordentown on September 5, 1974. The motion was withdrawn when defense counsel learned that defendant had objected to a consolidation of the Middlesex and Burlington County indictments.

Before the trial started, the trial court advised defendant that Carrie Speight, who was confined to Clinton Correctional Institution for Women, was unavailable as a witness since she was scheduled for pre-surgery testing the next morning. Defendant stated that he could probably do without her testimony and desired to proceed. The assistant prosecutor remained silent during this colloquy and presumably was also willing to proceed in her absence.

The jury having been sworn, the prosecutor made his opening statement. He charged that defendant had been told by police officers that there was an outstanding warrant for the arrest of Carrie Speight for having committed a high misdemeanor, that defendant aided and assisted her by providing her with transportation to avoid arrest, and that the South River Police apprehended Speight and defendant in an automobile. In defense counsel's opening he conceded that Speight and defendant were in a car together in South River when apprehended, but contended that they had not been driving away to avoid arrest.

Before recessing until the State's first witness would be available, the trial court *sua sponte* questioned whether there was a problem at the heart of the case concerning proof of defendant's awareness of the outstanding warrant. Thereupon defense counsel moved to dismiss the action because the prosecutor had failed to make out a prima facie case in his opening.

Defense counsel's argument was bottomed on the prosecutor's failure to assert that defendant had actual knowledge that Speight was guilty of the particular high misdemeanor. After further colloquy with defense counsel, the court declared a recess during which defense counsel had an opportunity to locate legal precedents for his position. After the recess defense counsel presented some authority which he suggested supported his premise. In response, the prosecutor contended that the State need not prove that an accessory after the fact had personal knowledge of the crime which had allegedly been committed. Furthermore, the prosecutor stated that the State was prepared to prove that defendant was seated in an automobile nearby when Speight sold narcotics to an undercover agent, immediately after which she went to the car and handed the proceeds of the sale to defendant.

Defense counsel commented that this information concerning defendant's knowledge of the crime was a surprise and he requested that the prosecutor be restrained from offering such evidence. The prosecutor explained that he first became aware of this information during the recess. The trial court in an oral opinion held that it would not permit the State to prove defendant had personal knowledge of Speight's commission of the crime, that it would limit the State's proofs to show only that defendant knew of the warrant, and that it would be unfair to put defendant to a trial. It then concluded:

I hold that the State's proofs as represented by Mr. Graves [the prosecutor] would lack an essential element, namely the element of

proof of commission of a crime, that therefore a motion to dismiss at the end of the State's case would have to be granted. Assuming that the outside limits of the State's proofs would be as represented by Mr. Graves and as limited just a minute ago by me, I see no point in going through the charade and I would enter a motion, an order dismissing the indictment at this time. The indictment is dismissed, the defendant is discharged, the case is over.

The trial court entered a judgment dismissing the indictment and also signed an order of dismissal which stated a "judgment of acquittal" was granted and the indictment dismissed.

The State appealed. A divided Appellate Division affirmed. 155 *N. J. Super.* 431 (App. Div. 1978). The majority concluded that the State could not appeal because, if successful, a new trial would violate the federal and state protections against twice being placed in jeopardy for the same offense. The dissenting judge, however, reasoned that the trial court's judgment was not an acquittal and that therefore the Double Jeopardy Clause was not a bar. The case is before us by virtue of the State's appeal. *R.* 2 :2–1 (a).

I

A preliminary matter concerns whether the State's right to appeal is foreclosed because *R.* 2 :3–1 does not provide for appeals by the State when a judgment is entered during trial. The Appellate Division held that the intent of *R.* 2 :3–1 was to limit the State's right to appeal coextensively with new trial preclusions due to the federal and state constitutional Double Jeopardy Clauses. 155 *N. J. Super.* at 442. Accord, *State v. Laganella*, 144 *N. J. Super.* 268, 283–284 (App. Div.), appeal dismissed 74 *N. J.* 256 (1976). We fully agree with that interpretation of the rule.

II

We next direct our attention to the correctness of the trial court's action in dismissing the indictment. We are satisfied that the court erred.

In the first place the trial court abused its discretion in dismissing the case at the conclusion of the openings. In the State's short skeletal opening the prosecutor failed to claim that defendant had personal knowledge that Speight had committed a particular crime and as noted previously, it was not until after the recess and during the argument on defendant's motion to dismiss that the prosecutor claimed that he had such proof. The proof that defendant was nearby when the undercover agent bought the narcotic from Speight who then went to the car in which defendant was seated and handed him the money was to be adduced through the same witnesses whose names had been furnished to defendant about seven months before the trial. *R.* 3:13-3 (a)(7). Defense counsel's *only* comment was "the information comes as a surprise that the prosecutor has this information available." However, reasonable trial preparation would probably have brought these facts to his attention. Significantly, defense counsel did not claim any prejudice. See *State v. Laganella, supra,* 144 *N. J. Super.* at 282-283. He did not seek any further discovery or assert that Speight was now a necessary witness. Nor did he claim that his failure to interrogate the State's witnesses was attributable in any manner to the prosecutor's late disclosure. Under these circumstances it would have been appropriate for the trial court to have interrogated defense counsel to determine in what manner and to what extent the surprise adversely affected his ability and readiness to proceed with the trial.

If defense counsel had desired some time for additional discovery or to call Speight as a witness, a continuance to accommodate him would have been in order. See *State v. Moore,* 147 *N. J. Super.* 47, 51 (App. Div. 1977), where the Appellate Division commented on a trial court's preventing a prosecutor from introducing into evidence some information which came to his attention during trial:

Exclusion of the testimony on the ground that the discovery rights of defendant were violated was not warranted. Mindful of the gen-

eral policy of admissibility, the judge should have availed himself of other means of protecting defendant from surprise. Ample protection of defendant's interest could have been achieved by according defense counsel an opportunity to interview the complaining witness, by granting a brief continuance, or by some other procedure which would have permitted defense counsel to prepare to meet the evidence.

Or, if a continuance had not been feasible, then a mistrial would have been in order, see *State v. DiRienzo*, 53 *N. J.* 360, 383 (1969); *State v. Heller*, 2 *N. J. Misc.* 1023, 1024, 126 *A.* 298, 299 (Sup. Ct. 1924), in which event double jeopardy principles may not have foreclosed a new trial. See *State v. Rechtschaffer*, 70 *N. J.* 395, 406–411 (1976).

█ Trial courts have been cautioned to be most reluctant in granting dismissals on opening statements of counsel.[1] *Passaic Valley Sewerage Comm'rs v. Geo. M. Brewster & Son, Inc.*, 32 *N. J.* 595, 606–607 (1960). This precaution exists because an opening statement should set forth only a succinct statement of what a party proposes to prove. The jury, having been given an overview of the State's and defendant's positions, will understand the nature of the action and be able to follow the evidence more intelligently. See *Farkas v. Middlesex County Board of Chosen Freeholders*, 49 *N. J. Super.* 363, 367–368 (App. Div. 1958). The better trial practice is to refuse to adjudicate a case on the opening of counsel. As Justice (then Judge) Francis commented:

The case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof. [*Sherman v. Josephson*, 44 *N. J. Super.* 419, 426 (App. Div. 1957)]

---

[1] We note in passing that our rules provide only for motions for judgments of acquittal after the close of the State's case or after all the evidence has been introduced. *R.* 3:18–1. *Cf. People v. Kerrick*, 86 *Cal. App.* 542, 261 *P.* 756 (1927), holding that a motion for judgment on the opening was not permissible in the absence of a rule providing for motions at that juncture.

Adherence to this policy in criminal trials is even more compelling in view of the double jeopardy factor. See generally Annot., "Power of trial court to dismiss prosecution or direct acquittal on basis of prosecutor's opening statement," 75 *A. L. R.* 3d 649 (1977).

 Not only did the trial court act prematurely but it mistakenly believed that a violation of *N. J. S. A.* 2A:85-2 (b) necessitated a showing that defendant knew that the person assisted had committed one of the crimes enumerated in the statute. The statute reads as follows:

Any person who:
    a. Knowingly or willfully aids or assists any person who has committed the crime of treason, misprision of treason, murder, kidnapping, manslaughter or any crime denominated by any law of this state as a high misdemeanor, to escape apprehension, whether or not a warrant has been issued for the apprehension of such other person; or
    b. Knowingly or willfully provides any such person with money, transportation, conveyance, place of abode, refuge, concealment, disguise, or otherwise aids or assists him, for the purpose of preventing or hindering his apprehension; or
    c. Being within this state, does, for the purpose of preventing or hindering the apprehension of such other person, whether within this state or not, knowingly or willfully give false or untrue reports of, or refuses to reveal the place of abode, refuge, concealment or disguise of any such person—
Is guilty of a misdemeanor.
This section does not apply to the husband or wife of a person attempting to escape apprehension for any crime punishable by the laws of this state.

Read literally the statute requires the defendant to have knowingly or willfully aided or assisted another person to prevent or hinder arrest. It does not state that the defendant must have personal knowledge that the person aided committed a specific crime. The literal reading also constitutes a sensible one, for there would appear to be no reason why personal knowledge of the crime should be required. Research has not disclosed any material suggesting a different legislative intent.

338

The statute appears to be modeled after the common law crime of an accessory after the fact. The treatises have defined the common law accessory after the fact as one who assists a felon, knowing at the time that he has committed a felony, for the purpose of hindering apprehension or conviction. *J. Miller, Criminal Law* 239 (1934); *R. Perkins, Criminal Law* 578 (1957); see *State v. Sullivan,* 77 *N. J. Super.* 81, 89–90 ,(App. Div. 1962). A reading of some of the authorities, however, indicates that at common law an accessory after the fact need only have notice, as distinguished from personal knowledge, that a crime has been committed. *Hale, History of the Pleas of the Crown* 622 (1st Am. ed. 1847); 1 *Chitly, A Practical Treatise on the Criminal Law* 264–265 (1816).

The defendant relies heavily on *Wren v. Commonwealth,* 67 *Va.* 313, 26 *Gratt.* 952 (1875), for the contention that personal knowledge is essential. However, that case does not support his position. In discussing the type of knowledge required, the court wrote:

> To constitute one an accessory after the fact, three things are requisite: 1. The felony must be completed; 2. He must know that the felon is guilty; 3. He must receive, relieve, comfort or assist him. *It is necessary that the accessory have notice, direct or implied, at the time he assists or comforts the felon, that he has committed a felony * * *.* And although it seemed at one time to be doubted, whether an implied notice of the felony will not in some cases suffice, as where a man receive a felon in the same county in which he has been attainted, * * * which is supposed to have been a matter of notoriety, it seems to be the better opinion, that some more particular evidence is requisite to raise the presumption of knowledge. [67 *Va.* at 314, 26 *Gratt.* at 956; emphasis supplied]

Further support for interpreting the statute to require notice rather than personal knowledge is found in a recent decision of the Massachusetts Supreme Judicial Court. *Commonwealth v. Devlin,* 366 *Mass.* 132, 314 *N. E.* 2d 897 (1974). In construing a statute which defined an accessory after the fact as one who aids a felon "knowing that he has

committed a felony," 366 *Mass.* at 133 n. 2, 314 *N. E.* 2d at 898 n. 2, that court declared:

> We hold that knowledge of the particular felony which has occurred is an element of the crime of being an accessory after the fact which must be proved beyond a reasonable doubt. That is to say, one charged as such an accessory must be shown to have been aware, *by his observations or by information transmitted to him*, of the substantial facts of the felonious crime. [366 *Mass.* at 136, 314 *N. E.* 2d at 899; emphasis supplied]

In a footnote the court added:

> There is no suggestion here that the knowledge of the accessory must be such that he is able to put a name or label on the felony — only that he is aware of the substantial facts which make up the elements of the felony. [366 *Mass.* at 136 n. 4, 314 *N. E.* 2d at 899 n. 4]

We are of the opinion that *N. J. S. A.* 2A:85–2 requires that the accessory need have only such notice as would reasonably alert one to the effect that another has committed a high misdemeanor. The knowing aiding and assisting of that person to avoid apprehension would justify a conviction. Accordingly, we believe that the trial judge erred in concluding that the State had to prove the defendant had actual personal knowledge that Speight had committed the crime.

Our interpretation is consistent with the new Penal Code which has replaced the accessory after the fact concept with one of obstructing justice. *N. J. S. A.* 2C:29–3. In doing so the Code "breaks decisively from" the common law notion that an accessory after the fact was in some sense an accomplice in the original crime. New Jersey Criminal Law Revision Commission, *The New Jersey Penal Code, Vol. II: Commentary* 283 (1971). The Code adopts the theory of obstructing justice and requires only that the defendant know that the other person has been charged with an offense. *N. J. S. A.* 2C:29–3.

## III

The fact that the judgment of dismissal was erroneously granted does not, however, foreclose the possibility that defendant's retrial is barred by double jeopardy principles inherent in constitutional protections. See *State v. Rechtschaffer,* 70 *N. J.* 395 (1976). We have consistently applied principles of double jeopardy which accord with interpretations of the Fifth Amendment of the Federal Constitution because the federal provision is applicable to the states by virtue of the Fourteenth Amendment, *Benton v. Maryland,* 395 *U. S.* 784, 89 *S. Ct.* 2056, 23 *L. Ed.* 2d 707 (1969), and because its language is broader than that found in the State Constitution, Art. I, par. 11.

In *State v. Farmer,* 48 *N. J.* 145 (1966), *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967), and *State v. Rechtschaffer, supra,* we reviewed and analyzed pertinent United States Supreme Court decisions related to the Double Jeopardy Clause. Due to the congressional amendment to the Criminal Appeals Act in 1971 permitting the government to appeal except when the Double Jeopardy Clause prohibits further prosecution, 18 *U. S. C. A.* § 3731, the Supreme Court has recently on numerous occasions explored the reaches of the Clause. See, *e. g., Crist v. Bretz,* 437 *U. S.* 28, 98 *S. Ct.* 2156, 57 *L. Ed.* 2d 24 (1978) ; *Sanabria v. United States,* 437 *U. S.* 54, 98 *S. Ct.* 2170, 57 *L. Ed.* 2d 43 (1978) ; *United States v. Scott,* 437 *U. S.* 82, 98 *S. Ct.* 2187, 57 *L. Ed.* 2d 65 (1978) ; *Burks v. United States,* 437 *U. S.* 1, 98 *S. Ct.* 2141, 57 *L. Ed.* 2d 1 (1978) ; *United States v. Wheeler,* 435 *U. S.* 313, 98 *S. Ct.* 1079, 55 *L. Ed.* 2d 303 (1978) ; *Lee v. United States,* 432 *U. S.* 23, 97 *S. Ct.* 2141, 53 *L. Ed.* 2d 80 (1977) ; *United States v. Martin Linen Supply Co.,* 430 *U. S.* 564, 97 *S. Ct.* 1349, 51 *L. Ed.* 2d 642 (1977).

██ We need refer only generally to certain basic concepts which remain unchanged. A defendant is generally entitled to have a trial proceed to its conclusion, to be free from

the harassment of successive prosecutions, and to receive only one punishment for an offense. *Downum v. United States,* 372 *U. S.* 734, 736, 83 *S. Ct.* 1033, 1034, 10 *L. Ed.* 2d 100, 102–103 (1963) ; *Wade v. Hunter,* 336 *U. S.* 684, 689, 69 *S. Ct.* 834, 837, 93 *L. Ed.* 974, 978 (1949). It also remains settled that jeopardy attaches after a jury is impaneled and sworn. *Crist v. Bretz, supra,* 437 *U. S.* at 38, 98 *S. Ct.* at 2162, 57 *L. Ed.* 2d at 33. In a nonjury trial it attaches when the first witness is sworn. *Crist v. Bretz, supra* at 37 n. 15, 98 *S. Ct.* at 2161 n. 15, 57 *L. Ed.* 2d at 32 n. 15, citing *Serfass v. United States,* 420 *U. S.* 377, 388, 95 *S. Ct.* 1055, 1062, 43 *L. Ed.* 2d 265, 274 (1975).

■ However, whether double jeopardy precludes a second trial depends on how and why the second proceeding came into being, due consideration being given to "the ends of public justice." *United States v. Perez,* 22 *U. S.* (9 *Wheat.*) 579, 6 *L. Ed.* 165 (1824). Thus, when a trial terminates because of "manifest necessity" arising out of, for example, a jury's inability to reach a verdict, *United States v. Perez, supra,* or at the request of the defendant whose move had not been triggered by prosecutorial misconduct, *United States v. Dinitz,* 424 *U. S.* 600, 96 *S. Ct.* 1075, 47 *L. Ed.* 2d 267 (1976), or where an indictment is dismissed at defendant's request in a situation functionally equivalent to a mistrial, *Lee v. United States, supra,* a second trial does not violate the Double Jeopardy Clause.

■■ When a trial court erroneously sets aside a jury verdict of conviction, appellate reversal does not subject defendant to a second trial because it has the automatic effect of reinstating the jury verdict, and double jeopardy principles are inapplicable. *United States v. Wilson,* 420 *U. S.* 332, 95 *S. Ct.* 1013, 43 *L. Ed.* 2d 232 (1975) ; *State v. Kleinwaks,* 68 *N. J.* 328 (1975). However, if a conviction has been set aside because of insufficient evidence, as distinguished from trial error, the Double Jeopardy Clause prevents a second trial. *Burks v. United States, supra; Greene v. Massey,* 437

*U. S.* 19, 98 *S. Ct.* 2151, 57 *L. Ed.* 2d 15 (1978); see also *State v. Tropea,* 78 *N. J.* 309 (1978).

Dismissal by a trial court which terminates a trial. before a jury has rendered its verdict does not automatically bar the defendant's retrial. In *United States v. Scott, supra,* the Supreme Court distinguished between situations where the dismissal was grounded on bases unrelated to guilt or innocence and those related to a resolution of the offense charged. In *Scott,* defendant moved both during trial and at the close of all the evidence for dismissal because of pre-indictment delay. The trial court granted the motion at the end of the trial. On the government's appeal, the Sixth Circuit Court of Appeals dismissed the appeal on the ground that any further prosecution would be barred by the Double Jeopardy Clause. The Supreme Court reversed, holding that the defendant "has not been 'deprived' of his valued right to go to the first jury; only the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.' " *United States v. Scott, supra,* 437 *U. S.* at 100, 98 *S. Ct.* at 2198, 57 *L. Ed.* 2d at 80, citing *Arizona v. Washington,* 434 *U. S.* 497, 509, 98 *S. Ct.* 824, 832, 54 *L. Ed.* 2d 717, 730 (1978). This holding was bottomed on the concept that neither a judge nor a jury had decided the defendant's guilt or innocence within the factual context of the trial. *Scott* expressly overruled *United States v. Jenkins,* 420 *U. S.* 358, 95 *S. Ct.* 1006, 43 *L. Ed.* 2d 250 (1975), which held that even though there may not have been a factual resolution, a retrial was barred by the dismissal of an indictment.

*Sanabria v. United States, supra,* further illuminates principles governing trial court dismissals. At the conclusion of defendant's case, the trial court first granted defendant's motion to exclude certain evidence and then his motion for an acquittal because, due to the exclusionary ruling, no evidence connected him with the illegal activities involved. Upon the government's appeal, the First Circuit Court of Appeals held that the trial court had erred in its

ruling excluding the pertinent evidence and that, there having been no ruling on defendant's criminal liability as such, double jeopardy did not bar a retrial. The Supreme Court reversed. It emphasized that an acquittal due to insufficient proofs brought about by erroneous evidentiary rulings does not justify a retrial. 437 *U. S.* at 67–69, 98 *S. Ct.* at 2180–2181, 57 *L. Ed.* 2d at 56–57. See also *Lee v. United States, supra,* 432 *U. S.* at 30 n. 8, 97 *S. Ct.* at 2146 n. 8, 53 *L. Ed.* 2d at 87 n. 8; *United States v. Martin Linen Supply Co., supra,* 430 *U. S.* at 571, 97 *S. Ct.* at 1354, 51 *L. Ed.* 2d at 651. Once the acquittal resolves, correctly or not, the factual elements of the offense charged, double jeopardy prevents a new trial. *Cf. State v. Laganella, supra,* 144 *N. J. Super.* at 289 (suggesting distinction between dismissals which reflect a decision on the merits and those which do not).

We view the instant matter to be governed by the principles enunciated in *Scott* and *Sanabria.* The trial court did not select what undoubtedly would have been a wiser or more judicious avenue to resolve the problem with which it was confronted. It chose instead to consider the only proofs which it would permit the State to produce and to measure those proofs against its concept of the statutory requirement. This action was equivalent to the granting of a motion to dismiss at the end of the State's case. It saw no need to proceed formally through a trial. The jury having been impaneled and sworn, jeopardy had attached. The trial court's dismissal reflected an adjudication on the merits. The case was "over". The dismissal was a judgment of acquittal. The trial court's interpretation of the statute, though erroneous, led to prohibiting the admission of certain evidence—a ruling which may be "characterized as an erroneous evidentiary ruling," which in turn caused the acquittal for insufficient evidence. "That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the [case] * * *." *Sanabria v. United States, supra,* 437 *U. S.* at 68–69, 98 *S. Ct.* at 2181, 57 *L. Ed.* 2d at 56–57.

Affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUN-
TAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal*—None.