STATE OF NEW JERSEY, PLAINTIFF, v. JAMES MOORE, CRAIG ADAMS, DAVID BOSTIC, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Argued March 25, 1985—Decided June 13, 1985.

562

564

566

---

John Matthews, Asst. Essex Cty. Pros., for plaintiff (George L. Schneider, Essex Cty. Pros., attorney).

Roy B. Greenman and Arnold I. Budin for defendant Adams (Thayer, Greenman & Budin, attorneys).

Roger A. Solomon and Ollis Douglas, Jr., Asst. Dep. Publ. Defs., for defendant Moore (Joseph H. Rodriguez, Publ. Def., attorney).

NEWMAN, J.S.C.

This case raises a number of novel issues concerning the New Jersey death penalty statute. N.J.S.A. 2C:11–3. By way of pretrial motions the defendants sought to strike the aggravating factor supported by N.J.S.A. 2C:11–3(c)(4)(f), merge two aggravating factors supported by N.J.S.A. 2C:11–3(c)(4)(g), limit the application of an aggravating factor based on N.J.S.A. 2C:11–3(c)(4)(c) and eliminate the death penalty as a possible

sanction because the defendants, as participants in a joint beating, may not be found to have committed the homicidal act by their own conduct. Lastly the Court considered the issue of whether after a jury has found the defendant guilty as to that part of the indictment that charges him with purposeful or knowing murder under *N.J.S.A.* 2C:11–3(a)(1) and (2), but has been unable to agree as to whether the homicidal act was by the defendant's own conduct, the State may retry the defendant and seek the death penalty against him a second time.

On August 30, 1984, the Grand Jury of Essex County indicted the defendants, James Moore, Craig Adams, and David Bostic, a juvenile, for the murder of Jack Hawthorne. The six count indictment first charges that the defendants did purposely or knowingly murder Hawthorne by their own conduct in violation of *N.J.S.A.* 2C:11–3(a)(1) and (2). The second count of the indictment alleges the defendants murdered Hawthorne while engaged in a robbery contrary to *N.J.S.A.* 2C:11–3(a)(3). The remaining counts of the indictment charge the defendants with robbery, *N.J.S.A.* 2C:15–1, burglary, *N.J.S.A.* 2C:18–2(a), possession of a weapon under circumstances not manifestly appropriate for lawful use, *N.J.S.A.* 2C:39–5(d) and conspiracy, *N.J.S.A.* 2C:5–2. The State has alleged that Moore and Adams, along with David Bostic, caused Hawthorne's death by beating him on three separate occasions during the course of a robbery of Hawthorne and the burglary of his apartment. Hawthorne was a 5'3", 65-year-old man who weighed 123 pounds. The defendants range from 16 to 21 years old. The State has filed a notice of aggravating factors subjecting them to possible imposition of the death penalty.

At the end of the trial of Craig Adams the jury found the defendant guilty on all counts of the indictment, including count one, which charged Adams with the purposeful or knowing murder of Jack Hawthorne. However, the jury was unable to reach a unanimous decision on whether or not Adams committed a purposeful or knowing murder by his own conduct. The jury was discharged after they reported they were hopelessly

deadlocked and further deliberation on the issue of "by his own conduct" would be futile. All remaining defendants are awaiting trial.

Adams and Moore filed a host of pretrial motions.[1] The majority of the motions were disposed of by the court on the record on February 14, 1985. This opinion addresses the pretrial issues reserved at the hearing of February 14, 1985 and whether or not the State should be allowed to retry Adams and once again seek the death penalty because of the jury's failure to reach a unanimous verdict on the section of count one of the indictment which alleges that Adams committed the murder of Hawthorne by his own conduct.

First the defendants filed a pretrial motion to strike the aggravating factor supported by *N.J.S.A.* 2C:11–3(c)(4)(f), which states that an aggravating factor shall be found when:

The murder was committed for the purpose of escaping detection, apprehension, trial, punishment or confinement for another offense committed by the defendant or another.

*N.J.S.A.* 2C:11–3(c)(4)(f).

Defendants' argument as to this factor is threefold. First, defendants argue that this section may only apply to the killing of a law enforcement officer. Second, defendants claim the murder must be committed to escape detection, apprehension, trial, punishment or confinement for an offense that arose out of an event separate from the events which lead up to the killing. Third, they contend that there is no evidence to support the State's allegation that they killed Hawthorne to prevent Hawthorne from identifying and testifying against them at trial.

---

[1] David Bostic did not join in the pretrial motions. Bostic was waived up from the jurisdiction of the Family Part to the Law Division. The Appellate Division affirmed the waiver in an unpublished opinion, *State of New Jersey in the interest of D.B.,* No. A–353–84T5 (App.Div. Feb. 19, 1985). Bostic's case is pending a request for certiorari to the Supreme Court of New Jersey.

The defendants' contention that *N.J.S.A.* 2C:11–3(c)(4)(f) applies only to the killing of a law enforcement officer or someone acting in the capacity of a law enforcement officer is without merit. This argument was rejected by courts of Florida and North Carolina in construction of a similar aggravating factor found within their death penalty statutes. *Riley v. State,* 366 *So.2d* 19, 22 (Fla.1979); *State v. Goodman,* 257 *S.E.2d* 569, 586 (N.C.1979). Moreover, defendants' contention makes no sense in light of aggravating factor *N.J.S.A.* 2C:11–3(c)(4)(h), which specifically applies to the killing of a law enforcement officer. To construe *N.J.S.A.* 2C:11–3(c)(4)(f) to apply only to the killing of a law enforcement officer would be an unwarranted duplication of aggravating factors.

The defendants' argument that the killing must be committed to avoid detection, escape, apprehension, trial, punishment or confinement for an offense that arose out of an event separate from the events which lead up to the killing calls for a narrow construction of this aggravating factor. In *State v. Monturi,* 195 *N.J.Super.* 317 (Law Div.1984), the court considered the construction of the *another offense* element of *N.J.S.A.* 2C:11–3(c)(4)(f). There, the court found that the series of offenses which occurred on or before the day of the murder could be used to support aggravating factor 2C:11–3(c)(4)(f). However, the 15 post-murder events or offenses could not be used to support this factor. *Monturi,* 195 *N.J.Super.* at 326–27. The alleged robbery of Hawthorne and the burglary of his apartment are clearly other offenses that occurred on the day of the murder. Therefore they may be used to support aggravating factor 2C:11–3(c)(4)(f). In other words, this court construes the "another offense" language to include the underlying crimes that may have been committed prior to or during the commission of the homicidal act itself. The gravamen of this aggravating factor is the silencing of potential witnesses, which could be for the underlying crime being committed or for a crime committed at another time. The invocation of this factor

should not depend on when the other crime occurred, but rather on the evil that attends silencing a potential witness.

██ The final element needed to support aggravating factor *N.J.S.A.* 2C:11–3(c)(4)(f) is that there must be a showing that the murder was committed to conceal the earlier offenses. *Monturi,* 195 *N.J.Super.* at 327. There must be proof of the requisite intent to avoid arrest and escape detection. *Riley,* 366 *So.2d* at 22. There must be evidence from which the jury could infer that at least one reason for the killing was to prevent the victim from informing the police and testifying against the defendants. The mere fact of the death of the victim is insufficient to trigger this factor. *Goodman,* 257 *S.E.2d* at 586. The defendants have alleged there is insufficient evidence to support this factor.

██ In order to dismiss an aggravating factor before trial the defendant must demonstrate that the evidence is clearly lacking to support it. The aggravating factor shall only be dismissed in the discretion of the Court and only on the clearest and plainest ground. *State v. McCrary,* 97 *N.J.* 132, 140–145 (1984).

██ Here, there is evidence that Hawthorne was the next door neighbor of one of the defendants and that he knew who they were. This evidence is sufficient, for the purpose of a pretrial motion, to support the state's allegation that the defendants murdered Hawthorne to prevent him from identifying them to the police and testifying against them at trial.

██ Defendants have also moved to merge two aggravating factors that are supported by *N.J.S.A.* 2C:11–3(c)(4)(g). This section states that an aggravating factor may be found by the jury if:

> The offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary or kidnapping.
> *N.J.S.A.* 2C:11–3(c)(4)(g).

The defendants received notice of two aggravating factors supported by *N.J.S.A.* 2C:11–3(c)(4)(g). They are: (1) that the murder was committed during a robbery, and (2) that the murder was committed during a burglary. The defendants seek to consolidate these two factors into one.

To begin with, this motion is premature when it is considered at the pretrial stage. It becomes ripe if, after the guilt phase of the trial, the jury convicts the defendant of a purposeful or knowing murder by his own conduct and of both robbery and burglary. In Adams' case, the issue did not become viable because the jury was unable to reach a decision on whether or not Adams committed the murder by his own conduct. However, for the purpose of administration and clarification the court will consider the issue.

■■ *N.J.S.A.* 2C:11–3(c)(3)(a) and (b) require the jury to weigh and balance aggravating and mitigating factors. The jury must not merely count factors and recommend the imposition of the death penalty if there are numerically more aggravating factors than mitigating factors. It is the weighing of specific aggravating factors and *any* mitigating factors that causes the New Jersey death penalty statute to pass constitutional muster. It insures the death penalty will not be arbitrarily imposed. *See State v. Price,* 195 *N.J.Super.* 285 (Law Div.1984). Here, the jury should consider whether the killing occurred during a robbery and burglary. However, under *N.J.S.A.* 2C:11–3(c)(4)(g) these facts would be enumerated as a single aggravating factor with the jury instructed to consider both the robbery and burglary in the overall weighing process. The record under which an appeal is taken will then clearly reflect that the jury considered both the robbery and burglary pursuant to *N.J.S.A.* 2C:11–3(c)(4)(g). Both are therefore subsumed under 2C:11–3(c)(4)(g) and mentioned separately under the single aggravating factor. The weight assigned to the factor may, in the jury's view, be more because two underlying

felonies are involved, although only one aggravating factor exists.

The last aggravating factor that Adams and Moore have challenged in pretrial motions is *N.J.S.A.* 2C:11–3(c)(4)(c). *N.J.S.A.* 2C:11–3(c)(4)(c) provides that the jury may find an aggravating factor if:

The murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim. *N.J.S.A.* 2C:11–3(c)(4)(c).

Defendants claim that this factor is unconstitutionally overbroad and vague on its face under both the New Jersey Constitution and the United States Constitution. This argument was rejected in *State v. Bass*, 189 *N.J.Super.* 445 (Law Div.1983), which upheld the constitutionality of *N.J.S.A.* 2C:11–3(c)(4)(c) against challenges on both state and federal grounds.

The defendants have also moved that "torture" and "depravity of mind" elements be stricken from the aggravating factor for the purposes of their trials because the State has not presented any evidence to support these allegations. While the State has clearly provided evidence that the murder of Hawthorne involved an aggravated battery involving three separate beatings, they have not provided any evidence to support the allegation that the murder involved depravity of mind or torture. Therefore, the elements of depravity of mind and torture are stricken from the aggravating factor 2C:11–3(c)(4)(c) for the purposes of these trials. *State v. McCrary*, 97 *N.J.* 132 (1984). Should it be necessary to go forward to the death penalty stage of Adams' trial, or should it be necessary to go to a penalty stage in the trials of the remaining defendants, the State would be limited in its proofs in support of *N.J.S.A.* 2C:11–3(c)(4)(c) to evidence that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved an aggravated battery to Hawthorne.

Since the State must limit its proofs to aggravated battery for purposes of aggravating factor 2C:11–3(c)(4)(c), the

defendants' requests for bills of particular specifying the facts the State intends to rely on in support of its allegation of torture and depravity of mind are mooted. The defendants have been provided with ample discovery supporting the State's allegation that the murder of Hawthorne involved an aggravated battery. The defendants' request for a bill of particulars detailing the facts the State intends to rely on in support of its allegation of aggravated battery is, therefore, denied.

 The final pretrial argument to be considered is the defendants' application to eliminate the death penalty as a possible punishment for Adams and Moore because it cannot be established that either Adams or Moore caused Hawthorne's death *by his own conduct.* *N.J.S.A.* 2C:11-3(c). As noted before, this case involves a group beating of an old man. The State has conceded that the medical examiner is unable to say which specific blow caused the death. The State maintains that the cumulative effect of the blows delivered by the defendants caused Hawthorne's death. The State alleges that both Adams and Moore (as well as David Bostic) are principals in the murder, while the defendants each allege that they are merely unpaid accomplices and therefore they may not be subjected to the death penalty. If the defendants position is accepted no one within a group action that causes a death may be subject to the death penalty.

The position of the defendants is in direct opposition to the legislative intent behind the requirement that the defendant be found to have committed the homicidal act by his own conduct before the death penalty may be imposed. State Senator John F. Russo, Chairman of the Senate Judiciary Committee, and co-sponsor of Senate Bill No. 112, the act reinstituting capital punishment in New Jersey, specifically stated at a public hearing on February 26, 1982 that the "of his own conduct" language was left in the statute to apply to a joint beating. When asked for a set of circumstances which would justify why the

"by his own conduct" language should be in the statute, Senator Russo responded:

> Okay, I can and I will tell you where; two or more defendants jointly beat a victim with a hammer. The only thing is, one hits him 140 times, and the other hits him once. Theoretically you can't separate the cause of death. They both in effect inflicted the death, but one's part was inconsequential. I can see where that might be a case for leaving it in.

*Public Hearing, State Judiciary Committee Senate No. 112 (Death Penalty).* February 26, 1982 (Senator John F. Russo, Chairman, Senate Judiciary Committee, p. 20). It becomes a question for the jury to decide which members or member of the group who participated in the murder, committed the act by his own conduct. *Id.* at p. 18.

There is no question that there must be some direct participation by the actors that brings about the death of the victim. There is no exact formula to be recited. In some cases the line between a principal and an accomplice may even be blurred. In the example provided by Senator Russo, *supra*, p. 574, clearly the defendant who struck the victim only once should not be subject to the death penalty for he may be considered to be merely an unpaid accomplice. However, the defendant who struck the victim with 140 blows may be found to have caused the death by his own conduct. On the facts presented in this case there was a sufficient showing that Moore, Adams and Bostic directly participated in the beatings of Hawthorne. It therefore ultimately became a question of fact for the jury to resolve under the appropriate instruction.[2] Therefore the de-

---

[2]The jury received the following instruction:

Now, in this case you must decide whether each of the three assailants actively participated in the events leading to the death of Mr. Hawthorne. To be more specific, you have heard testimony as to three separate beatings administered to the decedent at three different times during the early morning hours of July 18th, 1984. In the event that you find beyond a reasonable doubt that the homicidal act occurred during the first two beatings, but you are not able to determine which of the three assailants caused the death of Mr. Hawthorne, but you are satisfied that it was at least one of the three and that all three actively participated in injuring or striking with the common purpose to kill or to cause Mr. Hawthorne

fendants pretrial motion to eliminate the death penalty as a possible punishment because it cannot be established that either Adams or Moore caused Hawthorne's death by his own conduct was denied.[3]

Although the issue of whether or not Adams committed the homicidal act by his own conduct was submitted to the jury, they were unable to reach a unanimous decision on the issue.

---

serious bodily injury, then you must find this defendant guilty of murder by his own conduct.

If you find beyond a reasonable doubt that the homicidal act which resulted in death occurred during the third beating, which was not administered by this defendant, if the testimony is to be believed, and that is for you to decide, then the defendant cannot be found guilty of a purposeful or knowing murder by his own conduct.

On the other hand, if you find beyond a reasonable doubt that the homicidal act which resulted in death occurred during the first and/or second beatings—if the testimony is to be believed and that's for you to decide—then you have to determine whether or not Craig Adams' participation in the first two beatings was sufficient to conclude beyond a reasonable doubt that he purposely or knowingly committed the homicidal act by his own conduct.

If you find that the homicidal act which resulted in death was the cumulative effect of three beatings, then you have to determine whether or not Craig Adams' participation in the first two beatings—if the testimony is to be believed and that's for you to decide—was sufficient to conclude beyond a reasonable doubt that he purposely or knowingly committed the homicidal act by his own conduct. If you can not conclude beyond a reasonable doubt when the homicidal act which resulted in death occurred, then the defendant can not be found guilty of a purposeful or knowing murder by his own conduct. Now if you find that only one assailant so acted or actually caused the death and Craig Adams did not, you may find him guilty of murder as well if you find that he was an accomplice. And here we are talking about purposeful or knowing murder but not by his own conduct. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another for which he is legally accountable or both.

[3]The final pretrial motion made by the defendants was a request for a bill of particulars requiring the State to specify *each act* of the defendants that caused Hawthorne's death. This motion was denied. The State had provided ample discovery to support its allegation that the cumulative effect of the beating allegedly administered by Adams and Moore to Hawthorne caused the victim's death.

Yet the jury was able to unanimously conclude that Adams committed a purposeful or knowing murder. The State contends that this amounts to a mistrial on count one of the indictment, which charged that Adams committed a purposeful or knowing murder by his own conduct. Therefore the State argued it should be allowed to retry Adams and once again subject him to the possible imposition of the death penalty.

R. 3:7–3(b) delineates the allegations that must be contained in an indictment for murder. R. 3:7–3(b) was amended in 1982 in order to reflect the Legislature's adoption of the death penalty. *S. Pressler, Current N.J. Court Rules, Comment, R. 3:7–3.* A defendant may not be subject to possible imposition of the death penalty unless the indictment contains the allegation that the homicidal act was committed by the defendant's own conduct or that the defendant procured the commission of the offense by payment or promise of payment of anything of pecuniary value. The allegation in the indictment that the defendant committed the act by his own conduct is not an element of the offense of murder. It is merely a triggering device for the death penalty phase of the trial. *N.J.S.A.* 2C:11–3(a)(1), (2) and (3) set forth the elements of a criminal homicide. Nowhere in *N.J.S.A.* 2C:11–3(a)(1), (2) or (3) does the statute provide that the defendant must have committed the homicidal act by his own conduct before he can be convicted of murder. The factual determination that the defendant committed the murder by his own conduct only becomes important after the defendant is found guilty of murder. *N.J.S.A.* 2C:11–3(c) states in relevant part:

Any person convicted under subsection (1) or (2) who committed the homicidal act by his own conduct or who as an accomplice procured the commission of the offense by payment or promise of payment ... shall be sentenced as provided hereafter ... *N.J.S.A.* 2C:11–3(c).

The statute goes on to provide the requirement for the death penalty phase of the trial. In Adams' case the jury returned a

guilty verdict, which found Adams had purposefully or knowingly committed the murder of Hawthorne. This factual finding established the existence of the elements of murder in *N.J.S.A.* 2C:11–3a(1) and (2). This finding is sufficient for a conviction of murder. The fact that the jury was unable to reach a conclusion on whether or not Adams committed the murder by his own conduct is not fatal to the murder conviction. It merely precludes the State from seeking the death penalty under *N.J.S.A.* 2C:11–3(c).

It is fundamental to our criminal jurisprudence that a defendant is entitled to have a trial proceed to its normal conclusion, *State v. Rechtschaffer,* 70 *N.J.* 395, 404 (1976), and to have his trial completed by a particular tribunal. *Crawford v. Fenton,* 490 *F.Supp.* 776, 783 (D.N.J.1980), reversed, 646 *F.2d* 810, 816 (3d Cir.1981), *cert.* den., 454 *U.S.* 872, 102 *S.Ct.* 344, 70 *L.Ed.2d* 178 (1981). Under normal circumstances the double jeopardy clause does not bar a second trial when the jury is unable to reach a verdict. *United States v. Perez,* 22 *U.S.* (9 Wheat.) 579, 6 *L.Ed.* 165 (1824); *State v. Lynch,* 79 *N.J.* 327, 341 (1979).

Whether or not double jeopardy precludes a second trial depends on two factors: (1) whether or not the first trial terminated because of "manifest necessity", and (2) whether the "ends of public justice" would otherwise be defeated. *Perez, supra,* 22 *U.S.* (9 Wheat.) at 580. The court in *State v. Rechtschaffer* commented on these two factors in the following illuminating way:

> "Manifest necessity" and "the ends of public justice" are concepts whose definitive outlines depend upon the singular facts and circumstances of each case. Existence of these two criteria depends upon balancing two prime factors: Public interest in seeing that there is a fair trial designed to end in a just and equitable judgment, and the constitutional protection to which the defendant is entitled that he shall not be harassed by subjection to two trials and two punishments for essentially the same offense. (Citations omitted). *State v. Rechtschaffer,* 70 *N.J.* 395, 405 (1976).

The public has a strong interest in seeing that a fair trial occurs and that the trial arrives at a just and equitable judgment. In Adams' case the jury did in fact come to a conclusion on the central issue of the case. The jury was able to unanimously conclude Adams committed the purposeful and knowing murder of Hawthorne. The time and resources devoted to the trial of a capital case are significant. The minimum exposure that a defendant faces by way of a mandatory minimum of 30 years in jail with a maximum exposure of life imprisonment with the 30 year parole ineligibility period, *N.J.S.A.* 2C:11–3(b), can hardly be characterized as insubstantial. Although this case did not proceed to the penalty phase, it did reach a just and equitable conclusion that was in the public interest.

The defendant in a criminal case has the right not to be harassed by subjection to two trials and two punishments for the same offense. Adams has already been subjected to one trial with a death qualified jury. The jury's inability to agree unanimously on the extent of Adams participation in the murder during the guilt phase of the trial is tantamount to the rejection of the death penalty for him. A jury that is unable to agree unanimously that the defendant committed the homicidal act by his own conduct would even be more unlikely to agree unanimously that the defendant should be sentenced to death when the extent of his own conduct is so central to the death penalty determination.

This court is satisfied that it would not serve the ends of public justice to require Adams to run the trial gauntlet again. *Cf. Arizona v. Rumsey,* 467 *U.S.* 203, 104 *S.Ct.* 2305, 81 *L.Ed.2d* 164 (1984). Adams has the right to be free from being required to sit through a new trial, and the presentation of all the evidence before a new death qualified jury. For these reasons the court finds the State is precluded from retrying Adams on count one of the indictment.