608 A.2d 990

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
WALTER COLLETTE, GENE DORN, AND HAROLD
MOSEE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 14, 1992—Decided July 1, 1992.

Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General, attorney).

*Peter L. Bruso* argued the cause for respondent Walter Collette (*Jacobs, Bruso & Barbone,* attorneys).

*Jacqueline E. Turner,* Assistant Deputy Public Defender, argued the cause for respondent Gene Dorn (*Wilfredo Caraballo,* Public Defender, attorney).

*Michael L. Testa* argued the cause for respondent Harold Mosee (*Basile, Testa & Testa,* attorneys).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether we should dismiss on double jeopardy grounds the State's appeal from judgments of acquittal entered by the trial court at the close of the State's case.

Atlantic County Indictment No. 89–12–3515 (State Grand Jury Indictment SGJ233–89–3(1)) charged defendants-respondents Walter Collette, Gene Dorn, and Harold Mosee with

conspiracy to commit racketeering (*N.J.S.A.* 2C:41–2d; count one), racketeering (*N.J.S.A.* 2C:41–2c and *N.J.S.A.* 2C:2–6; count two); conspiracy (*N.J.S.A.* 2C:5–2; count three); bribery (*N.J.S.A.* 2C:27–2 and *N.J.S.A.* 2C:2–6; counts four, five, and twelve as to defendant Collette; counts six, seven, eight, nine and ten as to defendant Dorn; count twelve as to defendant Mosee); gifts to public servants (*N.J.S.A.* 2C:27–6 and *N.J.S.A.* 2C:2–6; counts fourteen and seventeen as to defendant Collette; counts eighteen, nineteen, twenty, twenty-one and twenty-two as to defendant Dorn; count seventeen as to defendant Mosee); official misconduct (*N.J.S.A.* 2C:30–2 and *N.J.S.A.* 2C:2–6; count fifteen as to defendant Collette; count twenty-three as to defendant Dorn; count sixteen as to defendant Mosee); and commercial bribery (*N.J.S.A.* 2C:21–10a and 2C:2–6; count twenty-four, defendant Dorn only). Several codefendants, including Kaleem Shabazz, were also named as coindictees, and were charged with several offenses, including bribery and gifts to public servants.

The State filed notices of appeal from judgments of acquittal on counts 2, 4, 5, 14 and 17 regarding Collette; counts 2, 6, 7, 8, 9, 10, 18, 19, 20, 21 and 22 regarding Dorn; and count 17 regarding Mosee. Thereafter, we denied defendants' motions for summary disposition, which they had predicated on double jeopardy grounds. However, recognizing the significance of defendants' double jeopardy argument and the need to decide that issue before addressing the merits of the State's appeal, *i.e.*, whether the trial court correctly decided defendants' motions for judgments of acquittal, we "bifurcate[d] the double jeopardy issue from the substantive issues" and ordered an "expedited schedule ... for the full briefing and argument of the double jeopardy issue." Although we did not consolidate the appeals we ordered that they be placed on the same calendar. We now consolidate them for the purpose of this opinion.

The 27 count, 40–page indictment is a complex document, but the core allegation is that Collette and Dorn, as members of the

city council, in return for money or other benefits, influenced or attempted to influence the Atlantic City Zoning Board to act favorably upon certain commercial land use proposals. It is alleged that Mosee, who was not an office holder, aided and facilitated the scheme.

The various counts of the indictment were not concisely or simply phrased. We reproduce two counts of the indictment to inform the reader of the complexity of their structure:

### COUNT FOUR

#### (Bribery—Second Degree)
#### WALTER COLLETTE

on or about May 25, 1989, at the City of Atlantic City, in the County of Atlantic, elsewhere, and within the jurisdiction of this Court, did commit the offense of bribery, in that the said WALTER COLLETTE directly and indirectly did agree to accept and accept from another a benefit in excess of $200 as consideration for the decision, vote, recommendation and exercise of official discretion in an administrative proceeding, that is, the said WALTER COLLETTE being a public servant, that is City Council President of the City of Atlantic City, and thereby having, among others, the official duty to appoint and reappoint members of the Atlantic City Zoning Board, did agree to accept and accept $1000 in United States currency from Albert Black, as compensation for the said WALTER COLLETTE's exercise of influence over members of the Atlantic City Zoning Board, appointed by the said WALTER COLLETTE, in obtaining approval for a proposal submitted to the said Atlantic City Zoning Board for a commercial zoning classification and use variance for real estate property located at Adriatic and Maryland Avenues in Atlantic City, contrary to the provisions of *N.J.S.A.* 2C:27-2 and *N.J.S.A.* 2C:2-6, and against the peace of this State, the government and dignity of the same.

### COUNT SEVENTEEN

#### (Gifts of Public Servants—Third Degree)
#### WALTER COLLETTE

#### KALEEM SHABAZZ

#### and

#### HAROLD MOSEE

between on or about December 8, 1988, and on or about April 13, 1989, at the City of Atlantic City, in the County of Atlantic, elsewhere, and within the

jurisdiction of this Court, did commit the offense of gifts to public servants, in that the said HAROLD MOSEE, and said KALEEM SHABAZZ, being a public servant, that is, Atlantic City Zoning Board Chairman, and thereby having the official duties, among others, to review, evaluate, recommend or not recommend and approve or reject in a fair, unbiased and impartial manner proposals submitted to the Atlantic City Zoning Board, and the said WALTER COL-LETTE, being a public servant, that is, City Council President of the City of Atlantic City and thereby having the official duty, among others, to appoint and reappoint members of the Atlantic City Zoning Board, knowingly and under color of the offices of the said KALEEM SHABAZZ and the said WALTER COLLETTE, directly and indirectly through the said HAROLD MOSEE, did accept and agree to accept a benefit from another not allowed by law to influence the performance of their official duties, by accepting and agreeing to accept $1,000 in United States currency from Albert Black as compensation for the said WALTER COLLETTE's exercise of influence over members of the Atlantic City Zoning Board, appointed by the said WALTER COLLETTE, in obtaining approval for, and the said KALEEM SHABAZZ's approval of and support for, a proposal submitted to the Atlantic City Zoning Board for a commercial zoning classification and use variance for real estate property located at Adriatic and Maryland Avenues in Atlantic City, contrary to the provisions of *N.J.S.A.* 2C:27–6 and *N.J.S.A.* 2C:2–6, and against the peace of this State, the government and dignity of the same.

Other counts charged defendant Dorn in similar language.

After 29 trial days, the State rested. In granting defendants' motions for judgments of acquittal, the trial court ruled that Collette, Dorn and Mosee could not be guilty because they were not members of the zoning board and, therefore, had no power to act in matters before the board.

The State contends that the double jeopardy clause does not protect defendants because the trial court's determinations were not based on factual insufficiencies in the State's case and, alternatively, because defendants waived double jeopardy protection by failing to advance their contention that the indictment was insufficient through a pre-trial motion or a posttrial motion. *R.* 3:10–2; *R.* 3:10–3.[1] We now dismiss the State's appeals on double jeopardy grounds.

---

[1]Those rules provide:
> *R.* 3:10–2. *Defenses and Objections Which Must Be Raised Before Trial.*
> The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment

■ Rule 2:3–1(b) permits the State to appeal from a judgment dismissing an indictment "where not precluded by the constitution of the United States or of New Jersey." [2] The applicable constitutional principle is that appeals from judgments of acquittal or dismissal entered at trial are impermissible if

the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.

*United States v. Martin Linen Supply Co.,* 430 *U.S.* 564, 571, 97 *S.Ct.* 1349, 1354–55, 51 *L.Ed.*2d 642, 651 (1977). *See also Sanabria v. United States,* 437 *U.S.* 54, 98 *S.Ct.* 2170, 57 *L.Ed.*2d 43 (1978); *State v. Barnes, supra,* 84 *N.J.* at 370, 420 *A.*2d 303; *State v. Ortiz,* 202 *N.J.Super.* 233, 239, 494 *A.*2d 822 (App.Div.), *certif. den.,* 102 *N.J.* 300, 508 *A.*2d 187 (1985); *State v. Barcheski,* 181 *N.J.Super.* 34, 436 *A.*2d 550 (App.Div.1981).

■ In the present case the trial judge measured the State's evidence against his interpretation of the statutory elements and found the State's proofs to be inadequate. Even if, as the

---

or accusation, except as otherwise provided by *R.* 3:10–3 (defenses which may be raised only before or after trial) and *R.* 3:10–4 (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.

*R.* 3:10–3. Defenses and Objections Which May Only Be Raised Before or After Trial

The defense that the indictment or accusation fails to charge an offense and the defense that the charge is based on a statute or regulation promulgated pursuant to statute which is unconstitutional or invalid in whole or in part may only be raised by motion either before trial or within 10 days after a verdict of guilty or within such further time as the court may fix during such 10–day period, or on appeal. Such defenses shall not be considered during trial.

[2]The applicable constitutional standard is found in the Fifth Amendment of the United States Constitution which provides: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The Fifth Amendment's protection is broader than New Jersey's double jeopardy clause, which provides that "[n]o person shall, after acquittal, be tried for the same offense." *N.J. Const. of 1947,* Art. I, para. 11. *See State v. Barnes,* 84 *N.J.* 362, 370, 420 *A.*2d 303 (1980).

State urges, the trial judge misconstrued the statute and misunderstood the proofs and the State's theory of criminal liability, the disposition was an adjudication on the merits and, therefore, unappealable by the State.

*State v. Lynch,* 79 *N.J.* 327, 399 *A.*2d 629 (1979) is a persuasive parallel. There the trial judge granted defendant's motion to dismiss based on the assistant prosecutor's opening statement to the jury. The trial judge held that the proofs described in the State's opening statement would be insufficient as a matter of law to support a conviction under the statute as he construed it. The Supreme Court held that the judge's reading of the statute was incorrect and that, upon proper construction of the statute, the State's proofs were sufficient to convict. Nevertheless, the dismissal was held not appealable. Speaking for the Court, Justice Schreiber stated that the trial court "chose ... to consider the only proofs which it would permit the State to produce and to measure those proofs against its concept of the statutory requirement." *Id.* at 343, 399 *A.*2d 629. Although the trial judge's interpretation of the statute was erroneous,

[t]he jury having been impaneled and sworn, jeopardy had attached. The trial court's dismissal reflected an adjudication on the merits. The case was "over." The dismissal was a judgment of acquittal.

*Ibid.*

More recently, in *Arizona v. Rumsey,* 467 *U.S.* 203, 104 *S.Ct.* 2305, 81 *L.Ed.*2d 164 (1984), the Supreme Court addressed a double jeopardy issue in the context of the sentencing phase of a capital case. Under Arizona law, the trial judge determines whether a defendant convicted of murder shall be executed or sentenced to a life term. In the initial sentencing proceeding the issue was whether defendant had committed the murder "as consideration for the receipt or in expectation of the receipt of anything of pecuniary value." The trial judge ruled that this aggravating factor applied only to contract killings and not to killings to facilitate robbery or theft. As a result of this ruling,

the trial judge determined that no aggravating factors were present and sentenced defendant to life imprisonment.

On the State's cross-appeal, the Arizona Supreme Court ruled that the aggravating factor at issue applied to a theft committed in the course of a murder and, therefore, set aside the sentence of life imprisonment and remanded to the trial court for a second sentencing hearing. As a result of the second sentencing hearing, defendant was sentenced to death.

On appeal, however, the Arizona Supreme Court concluded that defendant's death sentence violated the constitution protection against double jeopardy.

The United States Supreme Court granted Arizona's petition for certification and affirmed, ruling that the trial court's original judgment amounted to an "acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense." *Id.* at 211, 104 *S.Ct.* at 2310, 81 *L.Ed.*2d at 171. Arizona contended that double jeopardy principles did not apply because the original sentence resulted from an erroneous construction of the statute. The Court rejected this contention and stated:

> In making its findings, the trial court relied on a misconstruction of the statute defining the pecuniary gain aggravating circumstance. Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. "[T]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' ... affects the accuracy of that determination, but it does not alter its essential character." *United States v. Scott,* 437 U.S. 82, 98, 57 L.Ed.2d 65, 98 S.Ct. 2187 [2197] (1978) (quoting *id.,* at 106, 57 *L.Ed.*2d 65, 98 S.Ct. 2187 [2201] (Brennan, J., dissenting)). Thus, this Court's cases hold that an acquittal on the merits bars retrial even if based on legal error.

467 *U.S.* at 211, 104 *S.Ct.* at 2310, 81 *L.Ed.*2d at 171–72. *See Sanabria v. United States, supra* (judgment of acquittal for insufficient evidence, based on erroneous evidentiary ruling, bars further prosecution and appellate review).

We conclude, therefore, that the double jeopardy clause of the Fifth Amendment to the United States Constitution would bar the retrial of defendants.

■ The State argues, however, that defendants waived their double jeopardy rights by not seeking a pre-trial determination of the "legal defense" they successfully pressed at trial. *See Serfass v. United States*, 420 *U.S.* 377, 394, 95 *S.Ct.* 1055, 1065, 43 *L.Ed.*2d 265, 277, (1975).[3] The State relies particularly on *State in Interest of S.Z.*, 177 *N.J.Super.* 32, 424 *A.*2d 855 (App.Div.1981).

*S.Z.* involved an appeal by the State from an order entered at the close of the State's case dismissing the complaint which had charged that the juveniles "did throw a stone and break the front window of complainant's place of business." The trial court granted the motion because it construed the applicable statute, *N.J.S.A.* 2C:17–3a(1), as requiring the employment of fire, explosives or other dangerous instrumentalities. This court ruled that the trial court's construction of the statute was erroneous and reversed and remanded for a new trial.

In response to the juveniles' contention that a retrial would violate the constitutional prohibition of double jeopardy, this court noted that the juveniles' motion to dismiss should have been made before or after a trial as required in *R.* 3:10–3, in which event double jeopardy concerns would have been avoided. We stated, *in dictum*, that "we should not let the juveniles profit by the failure of their counsel to abide by the *Rules* and make the motions either before or after trial." *Id.* at 36, 424 *A.*2d 855. Ultimately, however, we determined that "there was no verdict of acquittal on the facts," and, therefore, double jeopardy principles were not applicable.[4] *Ibid.*

Assuming for the purpose of this opinion that we decided *S.Z.*, at least in part, on a constructive waiver of double jeopardy protection through failure to raise the defense before

---

[3]*Serfass* alluded to the waiver issue, but did not address it.

[4]In light of *State v. Lynch, supra,* and *Arizona v. Rumsey,supra,* we have reservations regarding the correctness of this ruling.

or after trial, as required by rule, we are satisfied that the waiver principle is not applicable to the present case.

As previously indicated, the complaint in *S.Z.* was a paradigm of simplicity. It charged that the juveniles had broken a window with a stone. A motion to dismiss on the ground that the allegation in the complaint did not violate the cited statute would have required a comparison of the simple allegation with the statute. A consideration of the State's evidence would have been unnecessary.

The indictment in the present case lacked simplicity and clarity. The counts in question would have supported several alternative theories of guilt including the theory that defendants Collette and Dorn had appointed persons to the zoning board with the understanding that the appointees would vote in accordance with their nominators' instructions; the theory that Collette and Dorn had shared bribe money with zoning board members; and the theory that as co-conspirators and accomplices of zoning board members, Collette, Dorn and Mosee were also guilty under *N.J.S.A.* 2C:2–6, which the indictment specifically cited. *Cf. State v. Lamb*, 125 *N.J.Super.* 209, 216–17, 310 *A.*2d 102 (App.Div.1973) (no factual variance between indictment and proofs if proofs substantially adhere to that outlined in indictment).

Thus, to entertain a pre-trial motion in the present case, the motion judge would have had to sift and evaluate the State's evidence, a staggering volume of material. A court should not dismiss an indictment except on the clearest and plainest grounds and only where evidence to support it is clearly lacking. *State v. Vasky*, 218 *N.J.Super.* 487, 490–91, 528 *A.*2d 61 (App.Div.1987); *State v. Ferrante*, 111 *N.J.Super.* 299, 304, 268 *A.*2d 301 (App.Div.1970). In light of that principle, we are not persuaded that a pre-trial motion would have been an effective procedural device in this case.

We are persuaded that the trial judge's ruling could not have been deferred to a post-trial motion. The trial court was

compelled to interpret the statute prior to submitting the case to the jury because its construction would have been a necessary component of the court's instructions. *See State v. Green*, 86 *N.J.* 281, 289, 430 *A.*2d 914 (1981) (court must state the law and instruct jury on its application to the issues before them). Consequently, a ruling on the statute's meaning and its applicability to the case in light of the evidence presented could not have been deferred, unlike an issue regarding a statute's constitutionality. Having construed the statute, either after the State had rested or at the close of the evidence, the trial court had an obligation to decide defendants' motion for judgment of acquittal and, in doing so, to evaluate the evidence pursuant to the applicable standard, *State v. Reyes*, 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967), and in light of the court's interpretation of the statute.

The appeals are dismissed.